# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| GREG BOSTARD and TONY ROCKHILL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>VERIZON COMMUNICATIONS INC. and VERIZON NEW JERSEY, INC.,<br><br>        Defendants. | Case No.: 1:23-CV-08564<br>Hon. Joseph H. Rodriguez<br><br><br>ORAL ARGUMENT REQUESTED |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Bridget K. O'Connor
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
Telephone: +1.202.879.3939
Facsimile:  +1.202.626.8585

Leon F. DeJulius Jr.
Sharyl A. Reisman
Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: +1.212.326.3939
Facsimile:  +1.212.755.7306

*Counsel for Defendants*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................4

I.    PLAINTIFFS' ALLEGATIONS. ....................................................4

II.   REGULATION OF UTILITY-POLE ACCESS AND RELATED
      WORK...................................................................................6

III.  PLAINTIFFS HAD NOTICE OF THE POTENTIAL HAZARD OF
      LEAD-SHEATHED CABLES. .....................................................7

LEGAL STANDARD.........................................................................8

ARGUMENT .....................................................................................8

I.    PLAINTIFFS LACK ARTICLE III STANDING. ...........................8

      A.  Plaintiffs do not allege a concrete harm......................................9

      B.  Plaintiffs do not allege any risk of imminent harm. .................11

      C.  Plaintiffs lack standing for injunctive relief. ...........................13

II.   PLAINTIFFS' CLAIMS ARE TIME-BARRED..............................13

III.  PLAINTIFFS CANNOT STATE A CLAIM FOR NEGLIGENCE. .............18

      A.  Plaintiffs fail to plead any duty for their negligence claim. .....................18

      B.  Plaintiffs fail to plead that Verizon caused any injury. ............................20

      C.  Plaintiffs do not plead the other elements for medical monitoring. .........21

IV.   THE NEGLIGENCE PER SE CLAIM FAILS AS A MATTER OF
      LAW........................................................................................24

      A.  Plaintiffs are using negligence per se to circumvent statutory
          restrictions on private claims. ................................................25

      B.  Count 2 is contrary to New Jersey law limiting negligence per se..........26

      C.  Plaintiffs do not plead a RCRA violation. .................................28

V.    THE PUBLIC NUISANCE CLAIM IN COUNT 3 FAILS AS A
      MATTER OF LAW. ..................................................................29

      A.  Plaintiffs cannot allege a "special injury." ...............................29

      B.  Plaintiffs fail to allege interference with a public right. ..........................31

i

VI.   THE COURT SHOULD DISMISS THE CLASS ALLEGATIONS. ............33

    A.   Individualized issues predominate in medical monitoring cases.............33

    B.   Claim-splitting and untimeliness also bar the putative class....................38

CONCLUSION ......................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*325-343 E. 56th St. Corp. v. Mobil Oil Corp.*,
  906 F. Supp. 669 (D.D.C. 1995) ........................................................................27

*Alaska v. Walgreen Co.*,
  2024 WL 1178352 (Alaska Super. Mar. 01, 2024) ............................................32

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...........................................................................................34

*Amland Props. Corp. v. Aluminum Co. of Am.*,
  711 F. Supp. 784 (D.N.J. 1989) .........................................................................30

*Ayers v. Jackson*,
  525 A.2d 287 (N.J. 1987) ...................................................................................36

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) .........................................................................33, 34

*Barnett v. Six Flags Great Adv.*,
  2018 WL 2056154 (D.N.J. May 2, 2018) ...........................................................31

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................8

*Bell v. 3M Co.*,
  344 F. Supp. 3d 1207 (D. Colo. 2018) ...............................................................24

*Bennett v. Quest Diagnostics, Inc.*,
  2023 WL 3884117 (D.N.J. June 8, 2023) ...........................................................33

*Blanyar v. Genova Prods.*,
  861 F.3d 426 (3d Cir. 2017) .........................................................................15, 16

iii

*Boteach v. Socialist People's Libyan Arab Jamahiriya*,
    759 F. Supp. 2d 548 (D.N.J. 2010) .................................................................31

*Caleb v. CRST, Inc.*,
    43 F. App'x 513 (3d Cir. 2002) ......................................................................14

*Cashatt v. Ford Motor Co.*,
    2021 WL 1140227 (W.D. Wash. 2021)...........................................................37

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ............................................................................32

*City of Huntington v. AmerisourceBergen Drug Corp.*,
    609 F. Supp. 3d 408 (S.D. W. Va. 2022).........................................................32

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................13

*City of Phila. v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) ...........................................................................17

*City of W. Sacramento v. R & L Bus. Mgmt.*,
    2018 WL 3198118 (E.D. Cal. June 27, 2018) ..................................................29

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)...........................................................................10, 11, 12

*Clarke v. Lane*,
    267 F.R.D. 180 (E.D. Pa. 2010)......................................................................13

*Diaz v. C.R. Bard, Inc.*,
    2023 WL 3452667 (D.N.J. May 15, 2023).......................................................18

*Gates v. Rohm and Haas Co.*,
    655 F.3d 255 (3d Cir. 2011) ...............................................................34, 36, 37

*Gen. Tel. Co. of the Sw. v. Falcon*,
    457 U.S. 147 (1982)........................................................................................34

*Goasdone v. Am. Cyanamid Corp.*,
    808 A.2d 159 (N.J. Super. Ct. 2002) ...........................................................34, 36

*Haddonbrook Assocs. v. GE*,
    427 F. App'x 99 (3d Cir. May 4, 2011)..............................................................17

*Hallstrom v. Tillamook Cnty.*,
    493 U.S. 20 (1989)....................................................................................25, 26

*Harris v. Advance Process Supply, Co.*,
    2009 WL 1789545 (N.J. App. Div. June 25, 2009)...........................................14

*Huertas v. Bayer U.S., LLC*,
    2023 WL 3773139 (D.N.J. May 23, 2023)........................................................10

*In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*,
    537 F. Supp. 3d 679 (D.N.J. 2021)....................................................................21

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*,
    2015 WL 4092866 (S.D. Ohio July 6, 2015)...............................................24, 26

*In re Johnson & Johnson*,
    903 F.3d 278 (3d Cir. 2018) .........................................................................9, 12

*In re Lead Paint Litig.*,
    924 A.2d 484 (N.J. 2007) .....................................................................30, 31, 32

*In re Paoli R.R. Yard PCB Litig.*,
    35 F.3d 717 (3d Cir. 1994) ...............................................................................20

*In re St. Jude Med., Inc.*,
    425 F.3d 1116 (8th Cir. 2005) ..........................................................................34

*Johnston v. HBO Film Mgmt.*,
    265 F.3d 178 (3d Cir. 2001) .............................................................................38

*Jones v. BRG Sports, Inc.*,
    2019 WL 3554374 (N.D. Ill. Aug. 1, 2019) ......................................................38

*Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*,
   2017 WL 4074547 (D.N.J. Sept. 13, 2017)......................................................25

*Kimca v. Sprout Foods, Inc.*,
   2022 WL 1213488 (D.N.J. Apr. 25, 2022)......................................................10

*Koronthaly v. L'Oreal USA, Inc.*,
   2008 WL 2938045 (D.N.J. July 29, 2008) .....................................................10

*Labega v. Joshi*,
   270 A.3d 378 (N.J. App. Div. 2022) ..........................................................26, 27

*Lafferty v. Sherwin-Williams Co.*,
   2018 WL 3993448 (D.N.J. Aug. 21, 2018) ...............................................passim

*Lead Poisoning and Health*
   (August 23, 2019) ................................................................................................5

*Living Lands, LLC v. Cline*,
   657 F. Supp. 3d 831 (S.D. W. Va. 2023).........................................................28

*Lockhart v. Dorrance Publ'g Co., Inc.*,
   2023 WL 157323 (D.N.J. Jan. 11, 2023)......................................14, 15, 16, 17

*Mauro v. Raymark Industries, Inc.*,
   561 A.2d 257 (N.J. 1989) .................................................................................26

*Meghrig v. KFC W.*,
   516 U.S. 479 (1996)..........................................................................................25

*Melikian v. Corradetti*,
   791 F.2d 274 (3d Cir. 1986) .............................................................................39

*Mladenov v. Wegmans Food Mkts., Inc.*,
   124 F. Supp. 3d 360 (D.N.J. 2015)...................................................................33

*Moussouris v. Microsoft Corp.*,
   2016 WL 6037978 (W.D. Wash. Oct. 14, 2016)..............................................39

*Nafar v. Hollywood Tanning Sys., Inc.*,
339 F. App'x 216 (3d Cir. 2009) ........................................................................38

*Nicolosi v. Smith & Nephew, Inc.*,
2017 WL 632274 (N.J. Super. Ct. Feb. 16, 2017)..............................................17

*O'Shea v. Littleton*,
414 U.S. 488 (1974)............................................................................................13

*PECO v. Hercules, Inc.*,
762 F.2d 303 (3d Cir. 1985) ...............................................................................30

*Pettrey v. Enter. Title Agency, Inc.*,
241 F.R.D. 268 (N.D. Ohio 2006) ......................................................................39

*Ries v. Amtrak*,
960 F.2d 1156 (3d Cir. 1992) .......................................................................25, 26

*Rigatti v. Reddy*,
723 A.2d 1283 (N.J. Super. Ct. 1999) ................................................................19

*Rosenau v. City of New Brunswick*,
238 A.2d 169 (N.J. 1968) ...................................................................................16

*Santa Clarita Valley Water Agency v. Whittaker Corp.*,
2021 WL 6104175 (C.D. Cal. Dec. 3, 2021)......................................................27

*Schweitzer v. Consol. Rail Corp.*,
758 F.2d 936 (3d Cir. 1985) ...............................................................................20

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
2013 WL 5655480 (E.D. Pa. Oct. 17, 2013) ..........................................22, 23, 24

*Slippery Rock Area Sch. Dist. v. Tremco, Inc.*,
2016 WL 3198122 (W.D. Pa. June 9, 2016) ......................................................40

*Smith v. Lyons, Doughty & Veldhuis, P.C.*,
2008 WL 2885887 (D.N.J. July 23, 2008) .........................................................34

*St. Louis Chiropractic v. Fed. Ins. Co.*,
2008 WL 4056225 (D.N.J. Aug. 26, 2008) ......................................................34

*State ex rel. Hunter v. Johnson & Johnson*,
499 P.3d 719 (Okla. 2021)................................................................................32

*State v. Lead Indus., Ass'n, Inc.*,
951 A.2d 428 (R.I. 2008)..................................................................................32

*Stewart Title Guar. Co. v. L. Offs. of David Fleischmann*,
2023 WL 3168320 (D.N.J. Apr. 28, 2023)........................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)............................................................................................5

*Theer v. Philip Carey Co.*,
628 A.2d 724 (N.J. 1993) ............................................................................20, 22

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................8, 9

*Trinity Indus. v. Greenlease Holding Co.*,
35 F. Supp. 3d 698 (W.D. Pa. 2014)................................................................27

*Tripicchio v. UPS Store, Inc.*,
2023 WL 3182915 (D.N.J. Apr. 30, 2023)........................................................27

*Trump v. New York*,
141 S. Ct. 530 (2020)........................................................................................11

*Tsao v. Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) ........................................................................10

*Wademan v. Concra*,
13 F. Supp. 2d 295 (N.D.N.Y. 1998)................................................................26

*Weinberg v. Dinger*,
524 A.2d 366 (N.J. 1987) .................................................................................18

**STATUTES**

42 U.S.C. § 6972 ................................................................................................25, 28

47 U.S.C. § 224 ..........................................................................................................6

N.J. Stat. § 2A:14-1 .................................................................................................14

N.J. Stat. § 2A:14-2 .................................................................................................14

**OTHER AUTHORITIES**

29 C.F.R. §1910.1025 ...............................................................................................7

29 C.F.R. § 1910.268 .................................................................................................6

43 Fed. Reg. 52952 (Nov. 14, 1978) ........................................................................7

46 Fed. Reg. 6134 (Jan. 21, 1981) ...........................................................................7

Fed. R. Civ. P. 9 ......................................................................................................17

Fed. R. Civ. P. 12 ......................................................................................................8

Fed. R. Civ. P. 23 ....................................................................................................33

Restatement (Second) of Torts § 288 ......................................................................27

Restatement (Second) of Torts § 821B ...............................................................31, 33

Restatement (Second) of Torts § 821C ...............................................................29, 31

# INTRODUCTION

The Second Amended Complaint ("SAC") suffers from the same deficiencies as the initial Complaint and the First Amendment Complaint—vague allegations that are not sufficiently tied to Verizon, and do not specify any actual damages suffered by Plaintiffs.  Plaintiffs seek sweeping, state-wide relief based on alleged workplace exposure to lead from lead-sheathed cables while employed by third-parties, not Verizon.  Yet Plaintiffs implicitly concede that (i) they do not know whether this work resulted in actual ingestion of lead, (ii) there are no present personal-injury damages, and (iii) there are innumerable sources of lead exposure found throughout the environment.  Indeed, they request medical monitoring just to determine whether there is lead in their systems.  The claims fail as a matter of law for a litany of reasons.

First, the allegations show that each Plaintiff lacks standing.  Neither Plaintiff alleges any concrete injury or seeks personal-injury damages.  Plaintiffs instead claim to have a "present economic injury," SAC ¶ 14, but point only to *possible*, *future* costs of medical monitoring.  That is not a "present" injury, and Plaintiffs cannot cite an expense they would only incur to ascertain *whether* they actually ingested lead as the concrete harm that confers standing to sue over alleged lead exposure.  Nor can Plaintiffs show that any alleged future harm is "certainly impending."  Despite a combined forty-four years working around lead-sheathed cables, neither Plaintiff claims to have been diagnosed with, or to suffer from, a lead-

related condition; neither claims to have lead in his system; and neither plausibly alleges any imminent risk.  *See infra* Arg. § I.

Second, all claims separately fail as a matter of law under the governing statutes of limitations.  Plaintiffs allege that they began working as utility workers in 1990 and 2008, respectively.  But by that time—according to Plaintiffs' own allegations—any alleged workplace hazard from lead-sheathed cables was "obvious." SAC ¶ 22.  Indeed, the potential for lead exposure from telecom cables had been analyzed and studied by researchers for decades, had been the subject of federal regulation since the 1970s, and was well known to labor unions representing cable-provider employees like Plaintiffs.  The claims here accrued well before the applicable limitations period, which is two years for most of the claims and in no event more than six years.  The SAC fails to plead any basis for saving this case from Plaintiffs' delay.  *See infra* Arg. § II.

Third, Plaintiffs fail to plead the substantive elements of their three causes of action.  For the Negligence claim (Count 1), any duty to protect Plaintiffs from workplace lead exposure lay with ***their employers*** under federal and New Jersey law. Plaintiffs cannot shift that duty to Defendants, and they also fail to plead other elements of a negligence claim for medical monitoring, including injury, proximate causation, significant exposure to lead, and a distinct increased risk of a serious latent disease.  *See infra* Arg. § III.  Plaintiffs cannot overcome these defects by

bootstrapping an alleged violation of the Resource Conservation and Recovery Act ("RCRA") into a Negligence Per Se claim (Count 2). Negligence per se claims are "virtually non-existent" under New Jersey law, and Plaintiffs cannot invoke that theory here. The SAC wrongly attempts to circumvent the statutory scheme of RCRA, ignores New Jersey precedent on the use of negligence per se, and does not plausibly allege any underlying statutory violation. *See infra* Arg. § IV. Plaintiffs' alleged exposure to lead in a specialized, occupational role also cannot support a Public Nuisance claim (Count 3), which fails because Plaintiffs have not alleged the elements of special injury and public right. *See infra* Arg. § V. And in all events, individualized questions inherent to Plaintiffs' claims compel striking the class allegations. *See infra* Arg. § VI.

This is a case about possible lead exposure brought by two Plaintiffs who do not know if there is lead in their systems, fail to allege any present injury or imminent risk of harm, could have brought their speculative claims over a decade ago but chose not to, and cannot plead elements essential to each of their claims. The Court should, therefore, dismiss the SAC with prejudice.[1]

---

[1] For convenience, Defendants are collectively referred to herein as "Verizon," but they are distinct entities and not similarly situated for purposes of the alleged claims. Verizon Communications Inc. and Verizon New Jersey, Inc., each reserve all arguments that it is not properly named as a Defendant.

## BACKGROUND

### I.    Plaintiffs' Allegations.

Neither Plaintiff alleges having ever worked for Verizon.  Plaintiff Gregory Bostard is a former utility-pole worker who worked for non-party Comcast Corporation ("Comcast") from 1990 until 2019.  SAC ¶ 14.  In that capacity, Bostard alleges, he serviced Comcast equipment located on utility poles on which lead-sheathed telecom cables were also located.  *Id.*  According to Plaintiffs, Bell Telephone Company and the American Telephone & Telegraph Company strung these cables "between the late 1800s and the 1960s."  *Id.* ¶ 3.

Since 2008, Plaintiff Tony Rockhill has worked as a service technician for Altice USA ("Altice"), another cable television provider.  *Id.* ¶ 16.  Rockhill also claims that his utility work brought him close to lead-sheathed cables, which allegedly "are some fifteen inches away from his employer's cables."  *Id.*

Both Plaintiffs claim that lead-sheathed cables pose an "obvious" danger in their workplace.  *Id.* ¶ 22.  Their work for Comcast and Altice allegedly brought them into "direct" and "regular" contact with these cables, after which Plaintiffs would eat or rub their faces, eyes, and mouths.  *Id.* ¶¶ 14, 16.  But despite their collective forty-four years of alleged occupational exposure, neither claims to have lead in his system, much less to have ever suffered from a lead-related condition.

Nor do they claim to have ever sought or spent money on lead testing or medical treatment associated with lead exposure.

Moreover, Plaintiffs allege that there are innumerable sources of lead regularly encountered in everyday life.  As the materials incorporated into the SAC demonstrate, lead is a naturally occurring chemical element found in the earth's crust.[2]  Historically, it also has had commercial uses, including as an additive in gasoline and the manufacture of pipes and cookware.  *See* CDC Factsheet.  Lead is still commonly found in products like baby formula, juice, and vegetables, and common sources of lead exposure include food and water from leaded pipes.[3]

Despite implicitly acknowledging in the SAC that they may have been exposed to lead from myriad other sources, Plaintiffs bring Negligence, Negligence Per Se, and Public Nuisance claims against Verizon and on behalf of a class defined as "utility pole workers who were occupationally exposed to Defendants' lead-sheathed cables in New Jersey."  SAC ¶ 85.  Plaintiffs "do[] not seek personal injury

---

[2] Center for Disease Control, *National Biomonitoring Program Factsheet* (July 12, 2013) ("CDC Factsheet").  The CDC Factsheet, which is available at https://www.cdc.gov/biomonitoring/lead_factsheet.html, is cited in the SAC and thus incorporated into the pleadings.  *See* SAC ¶ 38 n.4.  Accordingly, it may be considered in considering a motion to dismiss.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[3] World Health Organization, *Lead Poisoning and Health* (August 23, 2019), and Welch, Teresa, *Lead Found in 20% of Baby Food, Report Says* (June 19, 2017), both incorporated into the pleadings.  *See* SAC ¶ 38 nn.2-3; *see also Tellabs*, 551 U.S. at 322.

damages," *id.* ¶ 9, but request two other forms of relief: (1) "a Court-supervised, Defendants-funded medical monitoring program … to pay for lead testing and additional medical monitoring"; and (2) "abatement to remove and properly dispose of the lead-sheathed cables in New Jersey and surrounding lead contamination." *Id.* ¶¶ 9, 117.

## II.    Regulation of Utility-Pole Access and Related Work.

Utility poles are regulated components of essential telecom infrastructure, and access to the cables they support is restricted. Under federal law, however, cable television providers like Comcast and Altice have a right of "nondiscriminatory access" to these poles so that they can use existing infrastructure to support their own broadcast equipment. 47 U.S.C. § 224(f).

At the same time, federal law obligates cable television providers to appropriately protect the workers they send up these poles. OSHA has promulgated at least two sets of comprehensive rules that regulate workplace safety in this environment. The first "sets forth safety and health standards that apply to the work conditions … performed … at telecommunications field installations," including "the installation, operation, [and] maintenance … [of] equipment used for signal or communication service." 29 C.F.R. § 1910.268(a)(1). Among other things, Section 1910.268 requires that the worker's "employer" provide tools and protective equipment needed for the work, which may include insulated clothing, climbing gear,

and eye protection. *Id.* § 1910.268(e). The "employer" must also train its employees on applicable precautions and practices, including the "[r]ecognition and avoidance of dangers relating to encounters with harmful substances." *Id.* § 1910.268(c)(1).

The second addresses "occupational exposure to lead." *Id.* § 1910.1025(a)(1). That rule imposes broad obligations on a worker's "employer" to monitor lead exposure. *Id.* § 1910.1025(d). Where an employee faces potential exposure to lead in the course of employment, his or her "employer" must provide training and information about substance identification and exposure limits. *Id.* § 1910.1025(d)(d)(i)-(ii). If exposure exceeds action levels and permissible limits, the worker's "employer" must take additional precautions, including personal protective equipment and medical screening. *Id.* § 1910.1025(e), (j). This rule also prohibits the consumption of food or beverages in areas where employees are exposed to heightened lead levels, and it requires that the "employer" ensure that employees exposed to heightened lead levels wash their hands and face before eating. *Id.* § 1910.1025(i)(4).

### III. Plaintiffs Had Notice of the Potential Hazard of Lead-Sheathed Cables.

Any alleged hazard from lead in telecom equipment was well known before Plaintiffs began their careers as utility workers. OSHA's lead workplace regulations, for example, were first promulgated in the 1970s. 43 Fed. Reg. 52952 (Nov. 14, 1978) (rule-making for occupational exposure to lead); *see also* 46 Fed. Reg. 6134

(Jan. 21, 1981) (discussing lead-sheathed cables).  And as Plaintiffs acknowledge, third-party researchers have been publishing articles about this potential source of lead exposure for "the past 50 years," SAC ¶ 6, while the Communications Workers of America—the union that represents communications workers like Plaintiffs—was aware in 1978 that "cable splicers may be exposed to a lead hazard."  *Id*. ¶ 62; *see also id*. ¶ 53.  Plaintiffs themselves allege that lead-sheathed cables pose an "obvious danger to … those who handle cables."  *Id*. ¶ 22.

## LEGAL STANDARD

A complaint must be dismissed under Fed. R. Civ. P. 12 if it fails to plead sufficient facts to state a claim to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To state a claim that survives a Rule 12(b)(6) motion, the complaint must rest on "factual allegations" that plausibly "raise a right to relief above the speculative level."  *Id*. at 545.  Mere "suspicion" and "legal conclusions" with a "formulaic recitation of the elements of" the claim are insufficient.  *Id*. at 555, 564.

## ARGUMENT

## I.    Plaintiffs Lack Article III Standing.

The Court should dismiss this action in its entirety for lack of standing.  To plead standing, each Plaintiff must allege that he "suffered an injury in fact that is concrete, particularized, and actual or imminent," and that "the injury would likely be redressed by judicial relief."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423

(2021).  Moreover, standing "is not dispensed in gross" for all purposes.  *Id*.  Each Plaintiff must, therefore, plead standing for each claim asserted and each remedy sought.  *Id*. at 431.  Plaintiffs have failed to satisfy these requirements.

### A.    Plaintiffs do not allege a concrete harm.

Plaintiffs both lack standing because they do not allege an actual concrete injury.  *See id*. at 442 ("No concrete harm, no standing.").  Neither Plaintiff claims there is currently any lead in his system, from a Verizon cable or otherwise, and neither Plaintiff purports to have been diagnosed with a lead-related condition.  Each Plaintiff in fact recognizes that any lead a person ingests can be excreted from the body, and expressly disclaims "seek[ing] personal injury damages" in this lawsuit. SAC ¶¶ 9, 45.

The SAC instead makes the conclusory allegation that Plaintiffs have "suffered a present economic injury in the form of the cost of the medical care made necessary by Defendants' negligent actions."  SAC ¶ 14.  But "conclusory assertions of economic injury" are not sufficient "to establish standing," *In re Johnson & Johnson*, 903 F.3d 278, 285 (3d Cir. 2018), and Plaintiffs do not allege any facts to plausibly demonstrate actual economic harm.  Neither Plaintiff claims to have spent money on blood tests or similar procedures designed to identify lead in their bodies or address lead-related health issues.  The only medical care alleged is the ***future*** monitoring that Plaintiffs seek in this lawsuit.  *See, e.g.*, SAC ¶ 9.  That is circular.

The cost of testing that is sought as a proposed remedy to detect whether lead is present cannot be an existing concrete injury that confers standing to file suit in the first place. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344-45 (11th Cir. 2021) (holding in a data-breach case that costs plaintiffs allegedly incurred to protect against a non-imminent risk of harm cannot confer standing).

At bottom, Plaintiffs claim only exposure to lead-sheathed telecom cables. But mere exposure is not a concrete injury, and courts regularly dismiss claims predicated only on exposure to a toxin. *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *5-6 (D.N.J. Apr. 25, 2022) (no standing to bring claims alleging consumption of lead in baby food); *Koronthaly v. L'Oreal USA, Inc.*, 2008 WL 2938045, at *1 (D.N.J. July 29, 2008) (no standing to bring claims alleging exposure to lead in lipstick); *see also Huertas v. Bayer U.S., LLC*, 2023 WL 3773139 (D.N.J. May 23, 2023) (no standing to bring claims based on alleged exposure to benzene). This Court should follow suit.

Any other result would open the floodgates to speculative litigation about all manner of everyday experiences. Lead is a chemical element that is naturally present in the environment, was added to gasoline for decades, is commonly found in all

manner of consumer products, and is routinely encountered in the air we breathe, the food we eat, and the water we drink.  If mere exposure to lead becomes sufficient to establish standing for medical monitoring and abatement claims, the line to the courthouse doors would be endless.

**B.    Plaintiffs do not allege any risk of imminent harm.**

Nor can either Plaintiff demonstrate standing based on any alleged risk of future harm from past lead exposure.  For allegedly *imminent* harm to qualify as an injury-in-fact under Article III, a plaintiff must show that the harm is "certainly impending." *Clapper*, 568 U.S. at 401.  Harm that turns on conjecture, speculation, or "guesswork" is insufficient. *Trump v. New York*, 141 S. Ct. 530, 536 (2020); *Clapper*, 568 U.S. at 414.

No "certainly impending" injury is pleaded here.  Together, Plaintiffs allege forty-four years of "routine[]" contact with lead-sheathed cables, but zero lead-related harms from that decades of experience.  SAC ¶ 16.  Their claims instead rest on a cascading series of impermissibly speculative leaps.  *First*, Plaintiffs allege they "sometimes" rubbed their faces after touching lead-sheathed cables, but do not know whether they ingested lead because of that.  SAC ¶¶ 14, 16.  *Second*, Plaintiffs concede that the body can excrete lead over time, but can only speculate about whether there is lead in their systems and at what levels; hence, they seek medical monitoring just to determine "the extent … of their exposure to Defendants' toxic

lead-sheathed cables." *See id.* ¶ 73.  **Third**, Plaintiffs can only speculate that any lead in their systems came from ***Verizon*** cables, and not those of another telecom carrier, the electrical utilities that also place equipment on utility poles, or any of the innumerable other environmental sources of lead.  ***Fourth***, if they have ingested lead, Plaintiffs can only speculate whether that will ever manifest in an illness, acknowledging that "[s]ometimes, individuals exposed to lead have no symptoms." *Id.* ¶ 49.  This sort of speculative daisy-chain cannot support a claim of "certainly impending" injury.  *Clapper*, 568 U.S. at 414.

Nor is there any risk of "certainly impending" injury from future exposure to lead-sheathed cables.  Plaintiff Bostard is a former utility-pole worker who makes no allegation about returning to work in that capacity.  Plaintiff Rockhill is allegedly a current telecom employee, but cannot manufacture standing based on his own conduct in the presence of a known risk.  As a matter of law, courts afford him "the dignity of assuming that []he acts rationally, and that []he will not act in such a way that []he will again suffer the same alleged 'injury.'"  *In re Johnson & Johnson*, 903 F.3d at 293.  Plaintiff Rockhill has subjective knowledge of the "obvious" hazard he alleges, and is entitled to employer-provided workplace protections and training under federal law.  Rockhill cannot claim standing to sue Verizon based on the possibility that he may, in the future, voluntarily rub his face with "hands that had been in direct contact with" lead-sheathed cables.  SAC ¶ 16; *see also In re Johnson*

*& Johnson*, 903 F.3d at 293 (no standing to sue over carcinogens in baby formula based on a desire to purchase the formula in the future).

### C.    Plaintiffs lack standing for injunctive relief.

Plaintiffs separately lack standing to the extent they seek prospective relief, such as abatement.  SAC ¶ 9.  Standing for injunctive relief requires more than "speculati[on]" about future injury; there must be a plausibly alleged "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…."). As set forth above, the SAC does not plead any such threat of future harm.  *See supra* Arg. § I.B.  Moreover, Plaintiff Bostard cannot allege that injunctive relief would redress any purported harm.  As a ***former*** utility-pole worker, he is "no longer ... subject to the conditions [he wishes] to abate" and so has no standing to seek injunctive relief against those conditions. *Clarke v. Lane*, 267 F.R.D. 180, 191 (E.D. Pa. 2010).

All claims thus fail as a matter of law for lack of standing.

## II.    Plaintiffs' Claims Are Time-Barred.

The SAC also fails on the independent basis of untimeliness.  The applicable statutes of limitations are two years for any claim of negligence, negligence per se,

and medical monitoring, and—at most—six years for any other claim.[4]  Because the SAC and other sources that the Court may consider at this stage "facially show[] noncompliance with the limitations period," dismissal with prejudice is appropriate. *Caleb v. CRST, Inc.*, 43 F. App'x 513, 515 (3d Cir. 2002).

Limitations periods run "from the moment of the wrong," which is alleged here to be Plaintiffs' exposure to lead-sheathed cables.  *Lockhart v. Dorrance Publ'g Co., Inc.*, 2023 WL 157323, at *5 (D.N.J. Jan. 11, 2023).  That occurred in 1990 and 2008, when Plaintiffs began working around a potential source of lead exposure that was well understood even then.  SAC ¶¶ 14, 16.  They were, therefore, obligated to bring their exposure-based claims sometime in the 1990s or early 2010s, respectively, and this case is untimely by many years.  *Lockhart*, 2023 WL 157323, at *3 (dismissing as untimely based "only [on] the dates alleged in the Complaint").

The SAC tries to avoid this outcome by summarily invoking various exceptions to toll the limitations period.  *See* SAC ¶¶ 77-84.  Each is inapplicable.

***Discovery Rule***.  This rule delays the accrual of a claim "until the party learns, or reasonably should learn the existence of a state of facts which may equate in law with the cause of action."  *Lockhart*, 2023 WL 157323, at *5 (marks and citation omitted).  To plead the rule, Plaintiffs must plausibly allege why they "could not, by

---

[4] *See* N.J. Stat. §§ 2A:14-1, 2A:14-2 (two years for negligence claims and six years for other claims); *Harris v. Advance Process Supply, Co*., 2009 WL 1789545, at *9 (N.J. App. Div. June 25, 2009) (two years for medical-monitoring claims).

the exercise of reasonable diligence, have discovered essential information about the alleged" claim. *Id*. (marks and citation omitted). Conclusory allegations that merely repeat the legal standard do not suffice, *id*. at *4, but conclusory assertions are all the SAC offers. *See* SAC ¶¶ 80-82. Plaintiffs do not plead any ***facts*** showing why they could not have discovered their claims after the exercise of reasonable diligence.

Furthermore, the discovery rule is specifically inapplicable where the allegations demonstrate "the extent to which [an alleged toxin] had been well-studied and well-documented," where pertinent federal regulations have long been in place, and where the claimants "should have known … they worked with and were being exposed to" the hazard. *Blanyar v. Genova Prods.*, 861 F.3d 426, 432-33 (3d Cir. 2017) (affirming dismissal of exposure-based medical-monitoring claims as untimely) (marks and citation omitted). The SAC falls squarely within these confines. Plaintiffs themselves allege that visible lead dust on lead-sheathed cables "create[d] an obvious danger to ... those who handle cables," SAC ¶ 22; that well before they began working on utility poles, decades-old research already had shown "that telecom workers who work with or near the cables have elevated levels of lead in their bodies," *id*. ¶¶ 6, 57-60; and that in the 1970s, the union representing communications workers was aware that lead from cables could pose health risks if technicians did not wear proper protective equipment, *id*. ¶ 62. Likewise, the federal government has been regulating occupational lead exposure from utility-pole work

since at least the 1970s. 29 C.F.R. §§ 1910.268, 1910.1025. At a minimum, the "wide availability of information documenting the risk of exposure" to lead and its extensive "regulation by the federal government" was enough to put Plaintiffs on "inquiry notice" of the alleged danger decades ago. *Blanyar*, 861 F.3d at 432-33. That precludes application of the discovery rule.[5]

***Equitable Tolling***. This is a "rare, extraordinary remedy" that can toll the limitations period where "wrongful concealment"—*i.e.*, "fraud"—prevented a timely filing. *Lockhart*, 2023 WL 157323, at *3, 4 (citation omitted). Given that "the underlying misconduct is fraud," equitable tolling for fraudulent concealment requires more than "vague and conclusory allegations." *Id.* at *4 (citation omitted). Instead, the plaintiff must plead "some sort of trickery or act of concealment," and must do so with "particularity pursuant to Rule 9(b)." *Id.*

Plaintiffs do not meet that standard. The conclusory claim that Verizon made "affirmative misrepresentations and/or omissions to Plaintiffs" is unsubstantiated by any factual allegations. SAC ¶ 83. The SAC does not identify a single statement

---

[5] The SAC makes a conclusory reference to the "*Rosenau* rule" from *Rosenau v. City of New Brunswick*, 238 A.2d 169 (N.J. 1968). SAC ¶ 79. That case does not establish any independent exception that can save untimely claims. It stands for the basic principle that a cause of action accrues on "the date on which 'the right to institute and maintain a suit' first arose." *Rosenau*, 238 A.2d at 172 (marks and citation omitted). As set forth here, any claim in this case accrued in the 1990s and late 2000s.

made by either Defendant, much less a ***deceptive*** one.  Nor does either Plaintiff allege that he ever communicated with Defendants, was in any position to hear an allegedly misleading statement, or could have reasonably relied on such a statement to his detriment.  By any pleading standard, the claim of fraud is conclusory, and Plaintiffs make no attempt to meet the higher standard of Rule 9(b).  Moreover, regardless of any purported concealment, equitable tolling cannot apply once a claimant is reasonably on notice of his or her claims.  *Lockhart*, 2023 WL 157323, at *4.  As set forth above, the facts sufficient to put Plaintiffs on at least inquiry notice have been available for decades.

***Continuing Tort.***  Plaintiffs' invocation of the continuing tort doctrine also fails as a matter of law.  New Jersey has "recognized the continuing tort theory for discrimination and harassment claims," but "[n]o authority extends the doctrine to medical torts."  *Nicolosi v. Smith & Nephew, Inc.*, 2017 WL 632274, at *3 (N.J. Super. Ct. Feb. 16, 2017).  It is not for this Court to expand the state-law continuing tort rule. *See City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002).

Even where it does apply, the continuing tort rule requires a new, distinct tort—including a new breach of duty and new injury—within the limitations period. *Haddonbrook Assocs. v. GE*, 427 F. App'x 99, 101-02 (3d Cir. May 4, 2011).  The continuing effects of prior action, such as the claim "that contaminants may continue to flow," does not suffice.  *Id*. at 102.  Here, Defendants are alleged to have

undertaken a single course of conduct that began "decades" ago, and Plaintiffs allege workplace lead exposure dating back to 1990 or 2008.  SAC ¶¶ 1, 6, 14, 16.  The SAC does not allege any timely new tort that can help avoid dismissal.  *See Diaz v. C.R. Bard, Inc.*, 2023 WL 3452667, at *6 (D.N.J. May 15, 2023) ("[F]or statute of limitations purposes, 'continuing injuries' from a past tort must be distinguished from a 'continuing tort,' *i.e.*, one involving fresh breaches of a tort-law duty within the limitations period.").

## III.    Plaintiffs Cannot State a Claim for Negligence.

Count 1 separately fails on the independent basis that Plaintiffs have not alleged the elements of a negligence claim and the accompanying remedy of medical monitoring.  Because medical monitoring requires "negligent conduct," *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448, at *4 (D.N.J. Aug. 21, 2018), Plaintiffs must plead both the traditional elements of duty and injury under New Jersey negligence law, as well as additional elements unique to medical monitoring claims, *see Weinberg v. Dinger*, 524 A.2d 366, 373 (N.J. 1987); *Lafferty*, 2018 WL 3993448, at *4.  They fail to satisfy that pleading burden here.

### A.    Plaintiffs fail to plead any duty for their negligence claim.

Verizon did not and does not owe Plaintiffs a duty of care.  Duty is a "threshold inquiry" that is "quintessentially a question of law for the court." *Stewart Title Guar. Co. v. L. Offs. of David Fleischmann*, 2023 WL 3168320, at *3 (D.N.J.

18

Apr. 28, 2023) (marks and citation omitted) (granting motion to dismiss negligence claim upon concluding that plaintiff failed to allege a duty).  And here, federal law squarely places any duty on Plaintiffs' actual employers, not on Verizon.  OSHA regulations impose on "employers" extensive duties to provide workers like Plaintiffs with adequate training, protective equipment, workplace safety protocols, and other safeguards against exposure to lead from telecom cables.  *See supra*. Plaintiffs allege that **Comcast** and **Altice** were their employers, and they cannot use a common-law negligence claim to shift those companies' duties to protect them from workplace hazards to Verizon.

Indeed, New Jersey common law also precludes any allegation that Verizon owed Plaintiffs a duty.  Property owners have no duty to employees of a third-party who encounter known occupational hazards in the course of performing their duties. As a matter of law, a "landowner may assume that the independent contractor and [its] employees are sufficiently skilled to recognize the dangers associated with their task and adjust their methods accordingly to ensure their own safety." *Rigatti v. Reddy*, 723 A.2d 1283, 1286 (N.J. Super. Ct. 1999) (affirming dismissal of negligence claim for lack of duty) (citation omitted).  Independent of any federal workplace regulations, Verizon had no duty to Plaintiffs under New Jersey law.

**B.    Plaintiffs fail to plead that Verizon caused any injury.**

The SAC also fails to plead the other elements of negligence, including causation and injury.  Verizon could not have proximately caused exposure when the presence of lead was widely understood for decades, when lead was so "obvious" to pole workers that they "would at times scribble messages in it," and when federal workplace regulations already obligated Comcast and Altice to protect Plaintiffs from lead exposure.  SAC ¶¶ 22, 52.  And, as set forth above, Plaintiffs do not allege any concrete injury, and they admit there is no claim here for personal injury damages.  *Id.* ¶ 9.  Those omissions are determinative:  "[T]here is generally no cause of action in tort until a plaintiff has suffered identifiable, compensable injury." *Schweitzer v. Consol. Rail Corp.*, 758 F.2d 936, 942 (3d Cir. 1985).  Plaintiffs' own allegations thus preclude any negligence claim.

It makes no difference that Plaintiffs seek medical monitoring instead of direct monetary compensation.    The "special compensatory remedy" of medical monitoring is "not easily invoked."  *Theer v. Philip Carey Co.*, 628 A.2d 724, 733 (N.J. 1993).  Plaintiffs may only request medical monitoring from exposure to a hazardous chemical "when they have already suffered a manifest injury or condition caused by that exposure, and [their] risk of cancer is attributable to the exposure." *Theer*, 628 A.2d at 733; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) (*Theer* "imposed threshold requirements that a plaintiff must meet" for

medical monitoring); *In re Allergan BIOCELL Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679, 760 (D.N.J. 2021) (holding that New Jersey "require[s] a present injury in requesting the medical monitoring relief").

The SAC is thus contrary to New Jersey law. Claiming "there is no safe level of lead"—a naturally occurring element that remains pervasive in our environment—Plaintiffs seek medical monitoring based on alleged exposure, but do not allege the manifestation of any lead-related condition, or even the presence of lead in their systems, and expressly disclaim any request for personal injury damages. *Id.* ¶¶ 9, 39, 117. Under New Jersey law, Plaintiffs cannot request medical monitoring in the absence of any manifest injury just to determine whether at some point they might have ingested lead.

### C. Plaintiffs do not plead the other elements for medical monitoring.

The SAC also fails to allege the unique elements of medical monitoring. Even where there is an injury, medical monitoring requests fail at the pleading stage when the plaintiff does not allege: (a) significant exposure to a proven hazardous substance that can cause serious latent disease; (b) a distinctive increased risk of that disease due to exposure; (c) value in early diagnosis of this disease; and (d) that medical monitoring is reasonable, necessary, and different than any other medical monitoring the plaintiff would undergo. *See id.*; *see also, e.g., Lafferty*, 2018 WL 3993448, at *5 (dismissing medical monitoring claim). These elements compel dismissal here.

***First***, Plaintiffs do not allege "significant" exposure to lead. Plaintiffs offer the conclusory statement that they had "direct and regular exposure to Verizon's lead-sheathed cables," SAC ¶¶ 14, 16, but there are no allegations showing—for instance—to what extent they or their employers followed OSHA regulations regarding protective equipment and other safety procedures; how many of the utility poles Plaintiffs worked on were Verizon's; how often working on a Verizon pole put them in contact with Verizon lead-sheathed cables that had "degrade[d]" to the point of "leach[ing]" lead; or how often that contact resulted in lead ingestion. *Id.* ¶ 6. And, neither Plaintiff can allege whether there is even lead in his system. Vague, speculative allegations of exposure compel dismissing any request for medical monitoring. *Lafferty*, 2018 WL 3993448, at *5 (dismissing where plaintiffs failed to "identify … at what levels [they] were actually exposed").

***Second***, Plaintiffs do not allege that they are at a distinct, increased risk of a serious latent disease due to lead exposure. Medical monitoring is a tailored remedy, available only to address specific serious diseases uniquely associated with particular toxins. *See Theer*, 628 A.2d at 733. Courts thus reject requests for medical monitoring at the pleading stage where the plaintiff fails to allege, for instance, "which lung diseases" among "a host of different diseases" require monitoring. *Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 2013 WL 5655480, at *3 (E.D. Pa. Oct. 17, 2013); *see also Lafferty*, 2018 WL 3993448, at *5 (dismissing

22

where plaintiffs alleged "numerous potential health hazards presented by lead" but failed to identify "which diseases [they] are at an increased risk of developing").

Plaintiffs' kitchen-sink pleading is the opposite of what New Jersey law requires.  The SAC broadly alleges that lead "can cause" practically every generic ailment and symptom, from "mood changes" and "constipation" to general "neurological problems" and "decreased cognitive function."  SAC ¶¶ 33, 35.  Such "vague catch-all phrases" fail to allege a "serious latent disease"—let alone an increased risk of contracting that disease attributable to Verizon's lead-sheathed cables.  *Slemmer*, 2013 WL 5655480, at *3.  Indeed, these allegations do not even meet the basic due process requirement of "properly put[ting] a defendant on notice of what the claim is or the grounds on which it rests."  *Lafferty*, 2018 WL 3993448, at *4.  There is no practical way to litigate a case for medical monitoring that sweeps in dozens of generalized medical conditions with innumerable pathologies, some of which also happen to correlate with lead.

***Third***, Plaintiffs fail to allege that medical monitoring would be "reasonable," "necessary," and provide "value in early diagnosis" beyond what ordinary care already provides.  To state a claim for medical monitoring, Plaintiffs must "identify" a "medical monitoring program" that "would detect" a specific condition early enough to provide additional value in the treatment of that condition—*i.e.*, "actually protect" Plaintiffs from harm.  *Lafferty*, 2018 WL 3993448, at *5.  The SAC offers

only a "formulaic recitation of the[se] elements," which is not enough to state a claim. *Slemmer*, 2013 WL 5655480, at *4 (citation omitted); *see also* SAC ¶¶ 113-16. At most, Plaintiffs describe procedures for identifying the presence of lead in the body. *See* SAC ¶¶ 46-50, 74-75. But these procedures do not detect the likelihood of negative health issues resulting from lead, much less any diagnosable disease for which Plaintiffs seek medical monitoring. Plaintiffs likewise never allege that early detection of any lead-related condition would help to improve prognoses or otherwise have a beneficial change in the course of treatment. For this reason as well, Plaintiffs cannot plead a request for medical monitoring. *See also Bell v. 3M Co.*, 344 F. Supp. 3d 1207, 1227 (D. Colo. 2018) (dismissing medical monitoring claim where plaintiffs failed to plead "that medical examinations are reasonable and necessary ***to detect the claimed diseases***" (emphasis added)).[6]

## IV.    The Negligence Per Se Claim Fails As A Matter Of Law.

Count 2 purports to state a negligence per se claim based on alleged violations of RCRA. SAC ¶¶ 119-25. This claim also fails on multiple grounds. *See In re E. I. du Pont de Nemours & Co. C-8 Pers. Injury Litig.*, 2015 WL 4092866, at *23-25 (S.D. Ohio July 6, 2015) (citing a "wealth of case law" and dismissing a negligence per se claim for alleged RCRA violations).

---

[6] For the reasons set forth in this Section III, Plaintiffs cannot seek medical monitoring under any other theory as well, including Negligence Per Se and Public Nuisance.

### A.    Plaintiffs are using negligence per se to circumvent statutory restrictions on private claims.

Count 2 first fails because Plaintiffs are circumventing statutory limits on alleging a RCRA violation.    Negligence per se cannot be used to "upset the Congressional scheme for enforcing" a statute, *Ries v. Amtrak*, 960 F.2d 1156, 1164 (3d Cir. 1992), or to "end-run … the requirements" of the underlying statute, *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 2017 WL 4074547, at *11 (D.N.J. Sept. 13, 2017), *rev'd on other grounds* 765 F. App'x 802 (3d Cir. 2019).

Several express limits in RCRA preclude Plaintiffs' negligence per se claim. The statute prohibits any private cause of action absent at least sixty- or ninety-days prior notice to federal and state regulators, who can consider initiating their own enforcement action.    42 U.S.C. § 6972(b)(1)-(2).    Moreover, because RCRA is concerned principally with the generation, treatment, and disposal of waste, it bars compensatory relief. *Meghrig v. KFC W.*, 516 U.S. 479, 483 (1996).  Courts cannot entertain RCRA claims that do not comply with these mandatory notice requirements or that seek compensatory relief. *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 32 (1989) (affirming dismissal of RCRA claim for failure to provide statutory notice); *Meghrig*, 516 U.S. at 483 (upholding dismissal of a RCRA claim to recover compensatory relief).

These limits compel dismissing Count 2.  Plaintiffs do not allege that they have satisfied RCRA's notice provisions, which by itself would bar any citizen suit

under RCRA. *Hallstrom*, 493 U.S. at 32. Similarly, the medical monitoring that Plaintiffs seek is a form of compensatory relief under New Jersey law and, therefore, unavailable under RCRA. *See Mauro v. Raymark Industries, Inc.*, 561 A.2d 257, 263 (N.J. 1989); *Wademan v. Concra*, 13 F. Supp. 2d 295, 305 (N.D.N.Y. 1998) (dismissing RCRA medical monitoring claim). Where RCRA itself blocks Plaintiffs from alleging a statutory violation or seeking medical monitoring, they cannot use a state-law negligence per se claim to circumvent those limits. *See Ries*, 960 F.2d at 1164; *see also C-8 Pers. Injury Litig.*, 2015 WL 4092866, at *23 (citing and following cases that dismiss RCRA-based negligence per se claims).[7]

### B.    Count 2 is contrary to New Jersey law limiting negligence per se.

New Jersey law separately requires dismissing Count 2 as a matter of law. Negligence per se in New Jersey is "so narrow" as to be "virtually non-existent," including because New Jersey limits the type of statute that can support such a claim. *Labega v. Joshi*, 270 A.3d 378, 388 (N.J. App. Div. 2022). Negligence per se is available only "where [the] statute specifically incorporates a common law standard of care." *Id.* at 389. Without a common law standard of care built into the statute itself, violation of the statute cannot prove negligence. *Id.*

---

[7] Count 2 also relies on certain regulations under New Jersey's Solid Waste Management Act ("SWMA") that allegedly incorporate certain RCRA standards. *See* SAC ¶¶ 123-25. Simply incorporating federal standards cannot provide an independent basis for a negligence per se claim, and any reliance on SWMA as the predicate for such a claim fails for the same reasons as a RCRA-based claim.

Here, Plaintiffs do not—and cannot—allege that RCRA incorporates a *negligence* or other common-law standard of care. For that reason alone, the SAC cannot state a claim of negligence per se for an alleged RCRA violation. *See Tripicchio v. UPS Store, Inc.*, 2023 WL 3182915, at *10 (D.N.J. Apr. 30, 2023) (dismissing negligence per se claim where the underlying statute "contains no … common law standard of care"); *see also Santa Clarita Valley Water Agency v. Whittaker Corp.*, 2021 WL 6104175, at *1 (C.D. Cal. Dec. 3, 2021) (citing cases rejecting negligence per se claims based on RCRA, including because the statute does not define any standard of conduct).

New Jersey also prohibits negligence per se claims based on statutes intended to protect the general public. A statute must be "designed to protect" a *specific* "class of persons" to permit negligence per se. *Labega*, 270 A.3d at 391 n.11 (citation omitted); *see also Tripicchio*, 2023 WL 3182915, at *10; Restatement (Second) of Torts § 288(b) (a statute cannot support negligence per se where it secures "to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public"). RCRA does not "protect[] a particular class of people." *325-343 E. 56th St. Corp. v. Mobil Oil Corp.*, 906 F. Supp. 669, 688 (D.D.C. 1995). It is designed instead to generally protect "*the public* from soil and water contamination." *Id.* (emphasis added); *Trinity Indus. v. Greenlease Holding Co.*, 35 F. Supp. 3d 698, 724-25 (W.D. Pa. 2014) (dismissing negligence

per se claims based on general environmental statutes, including RCRA). That separately bars Count 2 as a matter of law.

### C.    Plaintiffs do not plead a RCRA violation.

In addition to the legal bars that prohibit Count 2, Plaintiffs fail to sufficiently allege a RCRA violation that can support their broad request for injunctive relief. Plaintiffs seek remediation of lead-sheathed cables throughout all of New Jersey, as well as remediation of any surrounding soil. *See* SAC p. 37 ¶ D. But there is no plausible allegation of for, instance, a state-wide "imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B). Plaintiffs allege facts pertaining only to a single New Jersey site (one that they do not claim to have worked at) that was allegedly "contaminated" with lead. SAC ¶ 29. Even as to that individual site, contamination alone "does not constitute an imminent and substantial endangerment." *Living Lands, LLC v. Cline*, 657 F. Supp. 3d 831, 848-49 (S.D. W. Va. 2023). It certainly is not enough to allege an "imminent and substantial" danger throughout all of New Jersey.

Moreover, Plaintiffs acted as—and the putative class comprises—"utility pole workers." SAC ¶ 85. These are trained professionals who are on notice of the workplace hazard of lead and protected by federal laws, which require training and appropriate protective equipment and penalize companies like Comcast and Altice when they fail to protect their employees. The workplace danger alleged here is one

that was addressed through federal regulations decades ago.  Plaintiffs cannot plausibly allege under these circumstances a statewide imminent and substantial danger to the class.  Count 2 should be dismissed for these reasons as well.  *See City of W. Sacramento v. R & L Bus. Mgmt.*, 2018 WL 3198118, at \*4 (E.D. Cal. June 27, 2018) (dismissing for failure to plausibly allege a RCRA violation).

## V.    The Public Nuisance Claim In Count 3 Fails As A Matter Of Law.

Allegations about an obvious occupational hazard to specialized professionals working in a restricted environment also are irreconcilable with the requirements of public nuisance.  Count 3 fails to allege either the "special injury" or "common right" necessary to state a claim under New Jersey public nuisance law.

### A.    Plaintiffs cannot allege a "special injury."

Public nuisance claims allege some "wrong to the entire community" and, therefore, are ordinarily "left to [the community's] duly appointed representatives." Restatement (Second) of Torts § 821C cmt. a.  Where ***private*** individuals like Plaintiffs seek to pursue such a claim, they must plead a "special injury"—an element designed to "relieve the defendant of the multiplicity of actions that might follow if everyone were free to sue for the common wrong." *Id*.  This "special injury" requirement comprises two aspects.  Plaintiffs must have (a) encountered the nuisance while exercising a right common to the general public, but (b) suffered an injury different in kind from that of other members of the public.  *See* Restatement

(Second) of Torts § 821C; *In re Lead Paint Litig.*, 924 A.2d 484, 496-98 (N.J. 2007) (following the Restatement). The SAC fails in both respects.

To start, this case concerns ***occupational*** lead exposure in a restricted workspace. That cannot support a public nuisance claim. For example, a private landowner could not pursue such a claim against a prior tenant for polluting the Delaware River. *PECO v. Hercules, Inc.*, 762 F.2d 303 (3d Cir. 1985). The plaintiff did not actually use the river, but encountered the alleged harm only in "the exercise of its private property rights." *Id*. at 316. Under Restatement principles, that precluded the public nuisance claim as a matter of law. *See also Amland Props. Corp. v. Aluminum Co. of Am.*, 711 F. Supp. 784 (D.N.J. 1989) (applying *Hercules*).

The same reasoning controls here. Plaintiffs allege exposure to lead only through direct, occupational contact with telecom cables. SAC ¶¶ 14, 16. Every putative class member encountered the alleged nuisance in the course of specialized employment, in a restricted work area with known hazards, and with the protection of federal workplace regulations. The general public has no similar right to ascend utility poles and work around suspended cables. Plaintiffs' alleged exposure is wholly dissimilar to that of the general public, and that alone precludes them from pleading the special injury necessary to state a public nuisance claim.

Plaintiffs also fail to allege any unique harm. Pleading "special injury" requires alleging some "harm ***of a different kind*** from that suffered by other persons."

Restatement (Second) of Torts § 821C, cmt. b. (emphasis added). Plaintiffs allege that lead exposure poses health risks to anyone, and claim only that they are at a "*uniquely high* risk" relative to the general public. SAC ¶ 51 (emphasis added). A "uniquely high" risk is by definition a difference of *degree*, not of *kind*. *See Boteach v. Socialist People's Libyan Arab Jamahiriya*, 759 F. Supp. 2d 548, 551 (D.N.J. 2010) ("[A]llegations as to *greater extent* fail[] to sufficiently allege a different *kind* of injury."); *see also* Restatement (Second) of Torts § 821C, cmt. b (public nuisance plaintiffs cannot meet the "special injury" requirement by claiming they "suffered the same kind of harm" as the general public "but to a greater extent"). For this reason as well, Plaintiffs cannot allege the special injury necessary for Count 3.

**B.    Plaintiffs fail to allege interference with a public right.**

Independent of the "special injury" element, the lack of a common right, otherwise known as a "public right," also compels dismissing Count 3. Public nuisance requires alleging interference with a "right common to the general public." Restatement (Second) of Torts § 821B(1). A common right is one that is "collective in nature," like use "of a public highway or a navigable stream." *Lead Paint*, 924 A.2d at 495, 497 (quoting § 821B, cmts. b, g). It is distinct from any "*individual* right" such as the right "not to be assaulted or defamed or defrauded *or negligently injured*." *Id*. at 497 (quoting § 821B, cmt. g; emphases added); *see also Barnett v. Six Flags Great Adv.*, 2018 WL 2056154, at *2 (D.N.J. May 2, 2018).

31

Courts thus reject, as a matter of law, general invocations of a common right to health and safety like the one alleged here. *See* SAC ¶ 129 (alleging interference with "public health, welfare, safety, peace, comfort, and convenience"). Under Restatement principles, the "allegation that defendants have interfered with the 'health, safety, peace, comfort or convenience of the residents of the [s]tate' standing alone does not constitute an allegation of interference with a public right." *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 453 (R.I. 2008) (quoting *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1114 (Ill. 2004)). Holding otherwise would "change the meaning of public right to encompass all behavior that causes a widespread interference with the private rights of numerous individuals." *Id.* at 454; *see also City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 475 (S.D. W. Va. 2022) (widespread distribution of opioids did not interfere with a public right); *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 727 (Okla. 2021) (same); *Alaska v. Walgreen Co.*, 2024 WL 1178352, at *3 (Alaska Super. Mar. 01, 2024) (same); *Beretta*, 821 N.E.2d at 1114 (rejecting nuisance claim predicated on "unreasonable jeopardy to health, welfare, and safety" caused by illegal firearms).

The SAC seeks to do exactly what New Jersey public nuisance law prohibits—elevate a risk of individualized injury to public nuisance status. Such a sweeping interpretation of the "public right" element would be contrary to New Jersey's adherence to the "traditional interpretation" of public nuisance claims. *Lead*

*Paint*, 924 A.2d at 427; *see also* Restatement (Second) of Torts § 821B.  Count 3 should therefore be dismissed.

## VI.    The Court Should Dismiss the Class Allegations.

As a matter of law, these claims cannot meet the requirements of a class action pursuant to either Fed. R. Civ. P. 23(b)(2) or 23(b)(3).  *See* SAC ¶ 84 (purporting to proceed under both).  The former governs claims of injunctive relief, while Rule 23(b)(3) applies to damages claims.  *Mladenov v. Wegmans Food Mkts., Inc.*, 124 F. Supp. 3d 360, 368-72 (D.N.J. 2015) (striking Rule 23(b)(2) claims in an action for damages).  Courts dismiss putative class claims that cannot allege Rule 23(b)(3) elements, including predominance, adequacy, ascertainability, and superiority, *id.*, or the "cohesive" element under Rule 23(b)(2), which is similar to, but "more stringent" than, predominance, *Bennett v. Quest Diagnostics, Inc.*, 2023 WL 3884117, at *12 (D.N.J. June 8, 2023).

### A.    Individualized issues predominate in medical monitoring cases.

Requests for medical monitoring raise "too many individual issues" for class treatment.  *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998).  Such claims necessarily implicate the "individual medical histories" of each putative class member; the degree of each person's alleged exposure to the relevant toxin; whether the individual circumstances of any given class member—such as age, health, and lifestyle—mitigate or exacerbate the alleged risk of developing a serious latent

disease; and whether a medical monitoring regime will be medically necessary or valuable for that particular individual. *See, e.g., Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 603, 624-25 (1997); *Gates v. Rohm and Haas Co.*, 655 F.3d 255, 268-70 (3d Cir. 2011); *Barnes*, 161 F.3d at 143; *see also In re St. Jude Med., Inc.*, 425 F.3d 1116, 1122 (8th Cir. 2005) (collecting cases rejecting class treatment); *Goasdone v. Am. Cyanamid Corp.*, 808 A.2d 159, 169 (N.J. Super. Ct. 2002).

These issues are "plain enough from the pleadings to determine" that class allegations must be dismissed. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 160 (1982). In *Lafferty*, for instance, the court dismissed putative class claims for medical monitoring based on alleged lead exposure. 2018 WL 3993448, at *6. Just by the nature of the claim, plaintiff could not satisfy the "demanding" predominance requirement because "individual fact finding [would be] ***essential*** to determine whether … [the] hazardous substances impacted someone." *Id*. Plaintiffs thus could not allege "on a ***class-wide basis***" entitlement to medical monitoring. *Id*. at *5; *cf. St. Louis Chiropractic v. Fed. Ins. Co.*, 2008 WL 4056225, at *11 (D.N.J. Aug. 26, 2008) (dismissing class claims that would require "individualized evaluation … in determining the reasonableness and necessity of medical bills"); *Smith v. Lyons, Doughty & Veldhuis, P.C.*, 2008 WL 2885887, at *4-5 (D.N.J. July 23, 2008) (Rodriguez, J.) (dismissing class claims where "the complaint itself demonstrates" that "individual questions will predominate").

34

Similarly, on its face, the SAC demonstrates that individualized issues will dominate multiple aspects of Plaintiffs' case:

***Exposure.*** The fundamental question of exposure is itself too individualized to support class treatment. The cause, nature, and degree of each putative class member's "potential exposures, if any, are likely drastically different"—particularly given the ubiquitous nature of lead, which is unavoidable throughout the environment and common consumer products. *Lafferty*, 2018 WL 3993448, at *6; *see also generally* CDC Factsheet. Each proposed class member will have different levels of exposure depending on, for example: (1) the extent to which he or she encountered other sources of lead exposure outside of a professional capacity; (2) to what extent does the putative class member's medical history and lifestyle already increase susceptibility to broadly alleged conditions like mood changes or decreased cognitive function; (3) how long was he or she employed as a utility pole worker; (4) how often did he or she work on poles with lead-sheathed cables; (5) who owned those cables and what shape were they in; (6) to what extent was there incidental contact with degraded cables; and (7) to what extent did the putative class member wear protective equipment or take other safety precautions? SAC ¶ 35. The "only way to determine whether [any putative class member has] been exposed is an individual inquiry," *Lafferty*, 2018 WL 3993448, at *6, and the SAC cannot plead that factual predicate on a class-wide basis. Nor can the Court conduct that

individualized inquiry in discovery "for thousands of people and call it a class-action." *Id*. (dismissing class medical monitoring allegations on the pleadings).

*Occupational risk*.    Liability to a class alleging occupational exposure introduces even more individualized considerations for each putative class member. Those include: (8) who was the putative class member's employer; (9) did that employer violate workplace safety regulations; (10) has the putative class member collectively bargained for additional safety measures; and (11) is the employer or any union already providing lead screening or other medical services?

*Reasonable and necessary.*    Medical monitoring must also be "reasonable and necessary." *Ayers v. Jackson*, 525 A.2d 287, 312 (N.J. 1987).    Whether that is true for each class member depends on that person's "unique medical history (which may involve other unrelated factors that could also require the medical monitoring)." *Goasdone*, 808 A.2d at 170.    Thus, "by definition," this element cannot be "proved on a classwide basis." *Gates*, 655 F.3d at 268-69 (quoting *Barnes*, 161 F.3d at 146). The SAC itself establishes that the manifestation of harm from lead exposure depends on "[b]one-to-blood lead mobilization" that is "unpredictable" but "increases during periods of: advanced age; broken bones; chronic disease; hyperthyroidism, immobilization (e.g., bedridden); kidney disease; lactation; menopause; physiologic stress; and pregnancy." SAC ¶ 48.  The need for medical

monitoring here necessarily will depend on "class members' individual characteristics and medical histories." *Gates*, 655 F.3d at 269.

***Medical conditions.*** Plaintiffs' overbroad list of potential medical conditions also introduces unavoidable individualized inquiry into the risk of contracting a disease. *See Lafferty*, 2018 WL 3993448, at *6. Plaintiffs do not allege that any particular "concentration" of lead creates a "danger point for all class members." *Gates*, 655 F.3d at 267. Rather, the SAC concedes there is no such common danger point for lead exposure: individuals exposed to toxic lead may excrete the lead altogether, or "may not develop lead-related conditions, or show lead-related symptoms, until years after the lead exposure," depending on numerous factors that allegedly "affect the biokinetics of lead." SAC ¶¶ 44-45, 50. Individuals exposed to lead may have "no symptoms," delayed symptoms that do "not appear right away," or symptoms that "flare up sporadically at irregular times." *Id.* ¶ 48. And "symptoms" here could refer to a broad range of conditions, from the mundane to the serious. As in *Gates*, the allegations expressly describe that there is no "threshold" danger point because "each class member … may be more or less susceptible to diseases from exposure" to lead. 655 F.3d at 268; *see also Cashatt v. Ford Motor Co.*, 2021 WL 1140227, at *2 (W.D. Wash. 2021).

These circumstances bar any request for class relief. "[T]here simply are not facts that could later be discovered that would render the complex, ubiquitous

37

individualized questions of harm and causation that pervade this case amenable to collective resolution." *Jones v. BRG Sports, Inc.*, 2019 WL 3554374, at *6 (N.D. Ill. Aug. 1, 2019). That warrants dismissing the class allegations.[8]

### B. Claim-splitting and untimeliness also bar the putative class.

Independent of the inherently individualized nature of medical monitoring claims, the SAC cannot allege a request for class treatment for two other reasons.

*First*, Plaintiffs' proposed class engages in improper claim-splitting. The SAC disavows any request for "personal injury damages," and "expressly preserves" the purported right "to pursue the same in other litigation." SAC ¶ 9. A class representative who severs claims for "economic harm and harm in the form of personal injury" arising from the same underlying facts "may be ... claim-splitting, which is generally prohibited by the doctrine of *res judicata*." *Nafar v. Hollywood Tanning Sys., Inc.*, 339 F. App'x 216, 224 (3d Cir. 2009).

This makes Plaintiffs atypical and inadequate putative class representatives. Proceeding with a class claim solely for economic damages from alleged exposure to lead-sheathed cables is contrary to the interests of all putative class members who could now allege an existing personal injury claim from that same exposure. "New

---

[8] This proliferation of individual issues also bars Plaintiffs from pleading that proceeding on a class basis would be "superior" to other methods for adjudicating any claim. *See Johnston v. HBO Film Mgmt.*, 265 F.3d 178, 194 (3d Cir. 2001).

Jersey has adopted a broad policy against claim-splitting—the entire controversy doctrine." *Melikian v. Corradetti*, 791 F.2d 274, 279 (3d Cir. 1986). "The entire controversy doctrine requires that a person assert in one action all related claims against a particular adversary or be precluded from bringing a second action based on the omitted claims against that party." *Id.* The SAC as pleaded will effectively strip putative class members of any personal injury claim that has accrued.

**Second**, the same standing and timeliness defects that preclude Plaintiffs' claims also make them inadequate representatives and exacerbate the need for individualized inquiry into each putative class member. Plaintiffs' own circumstances illustrate the difference between current and former utility-pole workers for injunction claims. *See supra* Arg. § I.C (noting that Plaintiff Bostard cannot seek to abate workplace conditions he is no longer subject to). As for timeliness, there is no plausible claim of conspiracy or concealment by Verizon. *See supra* Arg. § II. The SAC's reliance on equitable tolling and the discovery rule thus implicates the individualized circumstances of each putative class member, including when he or she was on inquiry notice of any claim. That further supports dismissing the putative class allegations at the pleading stage. *See Pettrey v. Enter. Title Agency, Inc.*, 241 F.R.D. 268, 284 (N.D. Ohio 2006); *Moussouris v. Microsoft Corp.*, 2016 WL 6037978, at *8 (W.D. Wash. Oct. 14, 2016) (holding at the pleading stage that individualized issues render equitable tolling "unsuited to adjudication in

a class proceeding."); *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, 2016 WL 3198122, at *19 (W.D. Pa. June 9, 2016) (striking fraud-based class claims).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint in its entirety and with prejudice.

Dated: April 18, 2024                    Respectfully submitted,

                                          *s/ Jennifer L. Del Medico*
                                          Leon F. DeJulius Jr.
                                          Sharyl A. Reisman
                                          Jennifer L. Del Medico
                                          JONES DAY
                                          250 Vesey Street
                                          New York, New York 10281
                                          Telephone: +1.212.326.3939

                                          Bridget K. O'Connor
                                          JONES DAY
                                          51 Louisiana Avenue, N.W.
                                          Washington, D.C. 20001
                                          Telephone: +1.202.879.3939
                                          Facsimile:  +1.202.626.8585

                                          *Counsel for Defendants*