**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| GREG BOSTARD and TONY ROCKHILL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VERIZON COMMUNICATIONS INC. and VERIZON NEW JERSEY, INC.,<br><br>Defendants. | Case No.: 1:23-CV-08564<br>Hon. Joseph H. Rodriguez<br><br><br>ORAL ARGUMENT REQUESTED |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

Bridget K. O'Connor
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 200001
Telephone: +1.202.879.3939
Facsimile:  +1.202.626.8585

Leon F. DeJulius Jr.
Sharyl A. Reisman
Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: +1.212.326.3939
Facsimile:  +1.212.755.7306

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

I.      Under Governing Precedent, Plaintiffs Lack Standing. .................................1

II.     Plaintiffs' Timeliness Arguments Ignore the Allegations. ...........................4

III.    The Negligence Claim Should Be Dismissed. ...........................................6

      A.     There is no duty to protect against this allegedly "obvious" danger. ..................................................................................6

      B.     Plaintiffs fail to plead a cognizable injury. .........................................7

      C.     Plaintiffs fail to plead the elements for medical monitoring...............8

IV.    The Negligence Per Se Claim Fails as a Matter of Law. .............................9

V.     Plaintiffs Do Not Adequately Allege Public Nuisance. ..............................11

VI.   The Class Allegations also Fail on the Pleadings........................................14

# TABLE OF AUTHORITIES

**Page**

CASES

*Ayers v. Jackson Twp.*,
525 A.2d 287 (N.J. 1987) ......................................................................7

*Biglioli v. Durotest Corp.*,
129 A.2d 727 (N.J. App. 1957) ...........................................................6

*Black v. Pub. Serv. Elec. & Gas Co.*,
265 A.2d 129 (N.J. 1970) ....................................................................7

*Blanyar v. Genova Products*,
861 F.3d 426 (3d Cir. 2017) .............................................................4, 5

*Camden County v. Beretta, U.S.A.*,
273 F.3d 536 (3d Cir. 2001) ..............................................................14

*Cetel v. Kirwan Fin. Grp., Inc.*,
460 F.3d 494 (3d Cir. 2006) ................................................................6

*Colon v. Tedesco*,
311 A.2d 393 (N.J. Super. 1973) ...................................................12, 14

*Donovan v. Philip Morris USA, Inc.*,
268 F.R.D. 1 (D. Mass. 2010)............................................................15

*Eaton v. Eaton*,
575 A.2d 858 (N.J. 1990) ...................................................................10

*Grewal v. Janssen Pharms., Inc.*,
2019 N.J. Super. Unpub. LEXIS 5766 (Oct. 21, 2019).......................12

*Haddonbrook Assocs. v. Gen. Elec. Co.*,
427 F. App'x 99 (3d Cir. 2011) ...........................................................5

*Harris v. Advance Process Supply, Co.*,
  2009 WL 1789545 (N.J. App. June 25, 2009)......................................................5

*Howell v. Waste Disposal*,
  504 A.2d 19 (App. Div. 1986).........................................................................13

*Huertas v. Bayer U.S., LLC*,
  2023 WL 3773139 (D.N.J. May 23, 2023)........................................................2

*Humphreys v. Eastlack*,
  51 A. 775 (Ct. Chancery 1902)........................................................................13

*In re Allergan*,
  537 F. Supp. 3d 679 (D.N.J. 2021)....................................................................7

*In re Lead Paint Litig.*,
  924 A.2d 484 (N.J. 2007) .................................................................11, 12, 13

*In re Nat'l Football League*,
  821 F.3d 410 (3d Cir. 2016) ............................................................................15

*In re Paulsboro Derailment Cases*,
  2013 WL 5936991 (D.N.J. Nov. 4, 2013) ..........................................................7

*In re Valsartan*,
  2021 WL 100204 (D.N.J. Jan. 12, 2021)............................................................3

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*,
  399 F.3d 248 (3d Cir. 2005) .............................................................................3

*Labega v. Joshi*,
  270 A.3d 378 (N.J. App. Div. 2022) ...............................................................10

*Lafferty v. Sherwin-Williams Co.*,
  2018 WL 3993448 (D.N.J. Aug. 21, 2018) ............................................8, 14, 15

*Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*,
  2013 WL 4517841 (D.N.J. Aug. 26, 2013) ........................................................4

*Lockhart v. Dorrance Publ'g Co., Inc.*,
  2023 WL 157323 (D.N.J. Jan. 11, 2023)................................................................4

*Lopez v. Swyer*,
  279 A.2d 116 (N.J. App. 1971) ............................................................................6

*Mauro v. Raymark Indus., Inc.*,
  561 A.2d 257 (N.J. 1989) ....................................................................................7

*Morris v. Haledon*,
  93 A.2d 781 (N.J. Super. 1952) ..........................................................................13

*PECO v. Hercules*,
  762 F.2d 303 (3d Cir. 1985) ...............................................................................14

*Reilly v. Ceridian Corp*,
  664 F.3d 38 (3d Cir. 2011) ...................................................................................3

*Ries v. Amtrak*,
  960 F.2d 1156 (3d Cir. 1992) .............................................................................11

*Rigatti v. Reddy*,
  723 A.2d 1283 (N.J. App. 1999) ...........................................................................6

*Russo Farms, Inc. v. Vineland Bd. of Educ.*,
  675 A.2d 1077 (N.J. 1996) ...............................................................................5, 6

*Severa v. Solvay Specialty Polymers USA, LLC*,
  524 F. Supp. 3d 381 (D.N.J. 2021)......................................................................13

*Short v. Ultramar Diamond Shamrock*,
  46 F. Supp. 2d 1199 (D. Kan. 1999).....................................................................10

*Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*,
  2013 WL 5655480 (E.D. Pa. Oct. 17, 2013) .........................................................8

*Sommerville v. Union Carbide Corp.*,
  2024 WL 2139394 (S.D. W. Va. May 13, 2024) ...................................................2

*Theer v. Philip Carey Co.*,
  628 A.2d 724 (N.J. 1993) ...............................................................................7, 8

*Tighe v. Peterson*,
  812 A.2d 423 (N.J. App. 2002) .............................................................................6

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021)....................................................................................1, 2

*Tripicchio v. UPS Store, Inc.*,
  2023 WL 3182915 (D.N.J. Apr. 30, 2023)........................................................10

*Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988) ...............................................................................12

**STATUTES**

42 U.S.C. § 6972.......................................................................................................10

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 821C.............................................................13, 14

Plaintiffs' Opposition ("Opp.") to the Motion to Dismiss ("MTD") ignores adverse precedent and repackages claims that other courts have found baseless—*i.e.*, medical monitoring claims based on mere "expos[ure] to a toxic substance" that "can cause" injury.  Opp. at 2, 7.  That substance may have come from Defendants' facilities or those of any other telecommunications company or utility, and Plaintiffs have not alleged that it actually has caused or imminently will cause them any concrete harm.  As the Supreme Court has made clear, "expos[ure] to … risk" does not convert speculation into standing to bring a federal lawsuit.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).  For that reason, courts have dismissed medical monitoring claims that—like this one—are premised on mere exposure.  The Opposition also ignores Plaintiffs' own allegation that lead cables posed an "***obvious***," visible, and well-documented workplace hazard, such that Plaintiffs had ample notice of this issue, which makes their claims untimely.  *See* Second Am. Compl. ("SAC") ¶ 22 (emphasis added).  And, they have failed to plead the elements of their claims.  The SAC should accordingly be dismissed in full.

## I.    Under Governing Precedent, Plaintiffs Lack Standing.

The SAC flunks Article III's requirement, as clarified in *TransUnion*, of harm that is "real," "not abstract," and "sufficiently concrete to qualify as an injury in fact." 594 U.S. at 424 (internal marks omitted); *see* MTD at 8-13.  Medical monitoring claims are not excepted from this requirement.   In fact, under *TransUnion*,

"[m]edical monitoring claims face significant hurdles in establishing federal standing," which is subject to "binding precedent [with] firm requirements for an injury-in-fact." *Sommerville v. Union Carbide Corp.*, 2024 WL 2139394, at *6, *8 (S.D. W. Va. May 13, 2024). Thus, a speculative "future risk of injury" from alleged toxic exposure is "not a concrete, present-day particularized injury" that confers standing to seek "a medical monitoring program" or other relief. *Huertas v. Bayer U.S., LLC*, 2023 WL 3773139, at *11 (D.N.J. May 23, 2023) (internal marks omitted); *see also, e.g.*, *Sommerville*, 2024 WL 2139394, at *7 (applying *TransUnion* and dismissing medical monitoring claim for lack of standing). Just like in those cases, Plaintiffs allege only that they were "exposed to a toxic substance" that "can cause" injury, without crystallizing those general claims into actual monetary outlay, physical injury, or even an imminent, substantial risk of harm. Opp. at 2, 7. And so, just like those cases, this one should be dismissed for lack of standing.

Plaintiffs' only response contradicts the Supreme Court's teachings. They argue for an absolute, bright-line rule that "exposure to a toxic substance necessarily" confers standing because "the Article III standing analysis in medical monitoring cases is unique." Opp. at 6, 8. But *TransUnion* emphasized that federal courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *TransUnion*, 594 U.S. at 425. Whether or not state courts would permit an exposure-only claim like this one, federal courts are

not free to set aside or minimize the requirements for Article III standing. As in subsequent cases like *Huertas*—which Plaintiffs never deign to mention—and *Sommerville*, the Supreme Court's standing jurisprudence applies to medical monitoring claims with as much force as in any other case filed in federal court.

Moreover, even taken at face value, the four cases that Plaintiffs cite to support their standing—all of which predate *TransUnion*—do no such thing. Two—*Paoli* and *Ayers*—did not address federal standing at all. In a third, *Reilly v. Ceridian Corp.*, the Third Circuit rejected standing for *data-breach claims* and, in dicta about toxic exposure, simply assumed the existence of a concrete injury when "cells are damaged." 664 F.3d 38, 45 (3d Cir. 2011). The fourth, *In re Valsartan* likewise included allegations of "genetic and cellular damage." 2021 WL 100204, at *12 (D.N.J. Jan. 12, 2021). But the SAC makes no such allegation of actual or imminent harm. *Reilly* itself reiterated that allegations of "'possible future injury'" at "some indefinite time" do not adequately plead standing. 664 F.3d at 42 (citations omitted).

Nor does the SAC plead standing for abatement. None of the cases Plaintiffs cite support their expansive theory that mere "residence or employment near a toxin" is sufficient to establish standing for state-wide remediation. Opp. at 10. Rather, in those cases, environmental pollution was causing "nearby residents to curtail their recreational use" of the environment. *E.g.*, *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 399 F.3d 248, 255 (3d Cir. 2005) (internal marks omitted). There is no such

allegation here, and Plaintiffs—one retired, and the other protected by both federal OSHA laws and knowledge of safety requirements for working near lead cables—do not sufficiently plead any actual harm or imminent risk that abatement would prevent or redress.

## II.    Plaintiffs' Timeliness Arguments Ignore the Allegations.

The SAC makes clear that Plaintiffs knew or should have known about the facts essential to their claims well over a decade before filing suit, when they began working near what Plaintiffs concede is the "obvious" danger of lead-sheathed cables.  SAC ¶¶ 14, 16, 22.  There is no dispute that the claims are barred under the statutes of limitations—at most, two years for negligence and six for nuisance—unless the discovery rule or continuing tort rule applies.  Neither does.[1]

***Discovery Rule***.    Under New Jersey's standard for the discovery rule, constructive notice bars tolling.  MTD at 14-16; *see Lockhart v. Dorrance Publ'g Co.*, 2023 WL 157323, at *5 (D.N.J. Jan. 11, 2023) (limitations period begins when "a reasonable person exercising ordinary diligence" would know that he "was injured due to the fault of another" (internal marks omitted)).  Plaintiffs fault Verizon for citing *Blanyar v. Genova Products*, 861 F.3d 426 (3d Cir. 2017), because that case applied Pennsylvania's purportedly narrower discovery rule, instead of New

---

[1] Plaintiffs "waived [their] opposition to" Verizon's equitable tolling and *Rosenau* arguments "by failing to respond."  *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013); *see also* MTD at 16-17.

Jersey's.  Opp. at 14 n.2.  But any alleged differences—which go to how hard it must be to discover a claim—are irrelevant; Plaintiffs do not dispute that both states reject use of the discovery rule to toll the limitations period for medical monitoring where, as here, plaintiffs "were on notice" of a "widely reported" potential for exposure. *Harris v. Advance Process Supply, Co.*, 2009 WL 1789545, at *10-11 (N.J. App. June 25, 2009); *see Blanyar*, 861 F.3d at 432.

In this case, Plaintiffs allege that they regularly worked around Verizon cables starting in 1999 and 2008, respectively, and that exposure to lead from telecom cables was by that time a well-known, obvious, and even visible hazard.  *See, e.g.*, SAC ¶¶ 6, 22, 62.  Plaintiffs did not need any more information about Verizon's conduct to know they might have a claim based on workplace lead exposure.

***Continuing Tort***.  Plaintiffs' continuing tort argument fails because it assumes that a continuing duty alone defers accrual of a claim.  Even where a continuing duty exists, the continuing tort doctrine also requires a "new injury" within the limitations period.  *Haddonbrook Assocs. v. Gen. Elec. Co.*, 427 F. App'x 99, 101 (3d Cir. 2011) (quoting *Russo Farms, Inc. v. Vineland Bd. of Educ.*, 675 A.2d 1077 (N.J. 1996)). That bars all of Plaintiffs' claims, as the only injury alleged here is a purported "need for medical monitoring."  Opp. at 15.  By Plaintiffs' own theory, any such need existed at the start of Plaintiffs' alleged exposures in 1990 and 2008, respectively,

and could have been discovered then through reasonable diligence.[2]  New Jersey's "continuing tort doctrine … will not apply where the plaintiff … should have discovered the injury and its caus[al] connection with the" alleged negligence.  *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 513 n.16 (3d Cir. 2006); *see also Lopez v. Swyer*, 279 A.2d 116, 123 (N.J. App. 1971) (same).  At the very least, the continuing tort doctrine cannot save Plaintiff Bostard's negligence claims, as he retired in 2019 and pleads no subsequent exposure from lead-sheathed cables.

## III.    The Negligence Claim Should Be Dismissed.

As Defendants explained, even apart from standing and statutes of limitations defects, Plaintiffs' negligence claim fails for (1) lack of duty; (2) lack of injury; and (3) lack of other elements needed for a medical monitoring claim.  MTD at 18-24.

### A.    There is no duty to protect against this allegedly "obvious" danger.

A landowner has no duty to protect a third-party's employees from hazards that are known or knowable through ordinary observation.  *Rigatti v. Reddy*, 723 A.2d 1283, 1286 (N.J. App. 1999) (no duty to protect third-party employee from hazards "obvious and visible … upon ordinary observation" (internal marks omitted)); *Tighe v. Peterson*, 812 A.2d 423, 425 (N.J. App. 2002) (no duty where plaintiffs "know or have reason to know of the condition and the risk involved"

---

[2] Plaintiffs cite *Biglioli v. Durotest Corp.*, 129 A.2d 727 (N.J. App. 1957), but *Russo* held decades later that a continuing tort requires new injury.  675 A.2d at 1086.

(internal marks omitted)).  Plaintiffs argue there can be a "duty to anticipate [] danger to a third person's employees," but rely on *Black v. Pub. Serv. Elec. & Gas Co.*, 265 A.2d 129, 135 (N.J. 1970).  Opp. at 16.  In *Black*, however, it could not "be assumed ... that … a workman is or should be aware" of the ***non***-obvious danger at issue. *Black*, 265 A.2d at 134.  Plaintiffs' allegation here—which the Opposition ignores— is that lead cables posed an "obvious" hazard.  SAC ¶ 22.

## B.    Plaintiffs fail to plead a cognizable injury.

Future harm, without any present manifestation, is insufficient to satisfy the damage element of a New Jersey negligence claim.  MTD at 20-21.  Plaintiffs insist that exposure is by itself "enough to satisfy the injury requirement."  Opp. at 18.  But every New Jersey case they cite allowing a medical monitoring claim to proceed involved an existing injury beyond mere exposure.  *See, e.g.*, *Ayers v. Jackson Twp.*, 525 A.2d 287, 303 (N.J. 1987) (expert testified to cellular injury).[3]  That tracks the New Jersey Supreme Court's explanation in *Theer v. Philip Carey Co.* that medical monitoring claims may proceed "when [plaintiffs] have already suffered a manifest injury or condition caused by" the alleged exposure.  628 A.2d 724, 733 (N.J. 1993).

---

[3] *See also Mauro v. Raymark Indus., Inc.*, 561 A.2d 257, 259 (N.J. 1989) (plaintiff diagnosed with pleural thickening); *In re Paulsboro Derailment Cases*, 2013 WL 5936991, at *1 (D.N.J. Nov. 4, 2013) (plaintiffs "allege[d] that they suffered physical injuries").  Defendants acknowledge inadvertent error in their initial reading of *In re Allergan*, but that case still involved alleged "physical injuries" unlike anything Plaintiffs allege here.  537 F. Supp. 3d 679, 760 (D.N.J. 2021).

Plaintiffs' attempt to reinterpret *Theer* by reading it in conjunction with *In re Paoli* to argue that the future ***cost*** of medical monitoring is sufficient injury, Opp. at 18-19, fails because *In re Paoli* was neither cited in *Theer* nor decided under New Jersey law. The lack of alleged injury thus precludes Plaintiffs' negligence claim as well.

### C.    Plaintiffs fail to plead the elements for medical monitoring.

Plaintiffs also fail to plead the elements needed to invoke the "special compensatory remedy" of medical monitoring, which "is not easily invoked." *Theer*, 628 A.2d at 733. In this regard, Plaintiffs' claims are like those dismissed in *Lafferty* and *Slemmer* because, like the plaintiffs in those cases, Plaintiffs have failed to allege, *inter alia*: (1) the "levels [of the toxin they] were actually exposed" to; (2) any particular ailment they were "at an increased risk of developing"; or (3) how medical monitoring "would actually protect them," aside from "making possible the early detection of disease." *Lafferty v. Sherwin-Williams Co.*, 2018 WL 3993448, at *5 & n.7 (D.N.J. Aug. 21, 2018) (internal marks omitted); *see also Slemmer v. McGlaughlin Spray Foam Insulation, Inc.*, 2013 WL 5655480, at *3-4 (E.D. Pa. Oct. 17, 2013). Plaintiffs dismiss *Slemmer* and *Lafferty* as involving "conclusory" allegations, Opp. at 21 & n.4, but theirs are no better. They vaguely allege only "regular" exposure to lead cables; a host of possible conditions that can be associated with lead (or many other causes); and medical monitoring that would detect lead in the body, but nothing further. *See* MTD at 22-24.

8

Plaintiffs' other arguments also fail. Their claim that "a significant exposure is one that creates a risk that warrants additional medical testing," Opp. at 19, is circular and wrong. Significant exposure and increased risk of a specific latent disease are distinct elements, neither of which Plaintiffs plausibly allege. MTD at 21-23. Their argument that there is no "signature injury requirement," Opp. at 21, is a strawman; Verizon never argued otherwise. That does not mean, however, that a laundry list of vague conditions—all with innumerable causes and most of which (e.g., "fatigue" and "headaches") are commonplace—suffices to plead a medical monitoring claim. MTD at 22-23 (citing cases). In any event, the SAC never alleges any procedure for detecting the early onset of any of these general conditions, or how early detection would alter treatment or improve any prognosis. *Id.* at 24.

## IV.    The Negligence Per Se Claim Fails as a Matter of Law.

Plaintiffs' negligence per se claim is contrary to both RCRA's statutory scheme and New Jersey law in several independent respects. *See* MTD at 24-29. In arguing otherwise, Plaintiffs again ignore adverse precedent in favor of minority decisions out of step with governing law. Opp. at 21-27.

***First***, Plaintiffs agree that New Jersey precludes per se claims based on statutes that do not incorporate a common law standard of care, *id*. at 21, but fail to meet this requirement. Their attempt rests on dicta from two cases (neither of which included per se claims) that RCRA codifies nuisance principles, and an argument

that RCRA indirectly incorporates a reasonableness standard of care because nuisance law entails reasonableness considerations. *Id.* at 22. That is far too attenuated. Plaintiffs' own authority shows that statutes must incorporate a common law standard with "plain language," *Eaton v. Eaton*, 575 A.2d 858, 866 (N.J. 1990), and that "the ***only*** occasion for application of negligence per se … [is] where a statute ***specifically*** incorporates a common law standard of care," *Labega v. Joshi*, 270 A.3d 378, 389 (N.J. App. Div. 2022) (emphases added). As Plaintiffs acknowledge, the plain language of RCRA does not do so. Opp. at 25-26 (quoting 42 U.S.C. § 6972).

***Second***, Plaintiffs never dispute that the statutory basis for a per se claim must protect a "*specific* class of persons." *Id.* at 22. They insist that RCRA protects such a class—and that they fall within it—because they allegedly are at risk of imminent endangerment. *Id.* But by its nature, RCRA is an environmental statute intended to "protect the public at large," not a specific class. *Short v. Ultramar Diamond Shamrock*, 46 F. Supp. 2d 1199, 1200-01 (D. Kan. 1999). Plaintiffs' logic—that anyone injured by conduct a statute prohibits can bring a per se claim—would apply to ***all*** statutes. That is not New Jersey law. *See Tripicchio v. UPS Store, Inc.*, 2023 WL 3182915, at *10 (D.N.J. Apr. 30, 2023) (dismissing per se claim by plaintiff allegedly over-charged for notarial services in violation of fee-setting statute).[4]

---

[4] Plaintiffs cite *Lozar* and *Dopaco*, but neither analyzed whether RCRA protects a specific class. Opp. at 23 n.5. Plaintiffs' other case, *Bernbach*, had one sentence

***Third***, Plaintiffs do not dispute that they have not complied with RCRA's notice requirement. Opp. at 23. Their argument that notice is inapplicable because this is a negligence per se claim, *see id.*, is the epitome of improperly using a per se claim to circumvent the statutory scheme, *Ries v. Amtrak*, 960 F.2d 1156, 1164 (3d Cir. 1992). And Plaintiffs' quibbles over how much notice to the government RCRA requires, Opp. at 24, are irrelevant because the SAC does not allege any notice at all.

## V.    Plaintiffs Do Not Adequately Allege Public Nuisance.

As Defendants explained, Plaintiffs have failed to allege both the "common right" and the "special injury" elements of a public nuisance claim. MTD at 29-33. Plaintiffs' response largely ignores the actual nuisance claim the SAC pleads—that lead "is unsafe … for human exposure," and that lead-sheathed cables therefore interfere with a right to "public health, welfare, safety, peace, comfort, and convenience." SAC ¶¶ 129, 132. That is precisely the type of personal-injury based claim the New Jersey Supreme Court eschews because any right to be free from injury is an "***individual*** right," not a ***common*** right that can support a nuisance claim, even if the right to health is "enjoyed by a large number of people." *In re Lead Paint Litig.*, 924 A.2d 484, 497, 500 (N.J. 2007) (emphasis added). Indeed, even when the legislature declared by statute that lead paint is a nuisance, the Supreme Court

---

of relevant analysis in allowing per se claims based on both RCRA and CERCLA, contrary to the weight of authority. *Compare* MTD at 27 (citing cases).

acknowledged the "persuasive[]" argument that doing so was "inconsistent with the traditional notion" of common right that applies here, *id.*, and New Jersey courts have subsequently rejected nuisance claims alleging interference with "public health, safety, peace, comfort, and convenience." *Grewal v. Janssen Pharms., Inc.*, 2019 N.J. Super. Unpub. LEXIS 5766, at *57 (Oct. 21, 2019).

In response, Plaintiffs cite cases about "municipal water contamination," chemicals in a "water supply," and the "welfare of a city." Opp. at 27 n.7. The SAC offers nothing to plausibly claim that such contamination is happening here, or that any community has been deterred from exercising any common right. The Opposition likewise fails to identify any such interference and, in any event, "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted).[5]

As to special injury, Plaintiffs argue this element does not apply to claims for "*equitable* relief." Opp. at 28. But their own precedent holds that "nuisances are abatable … by any individual who sustains 'special damage.'" *Colon v. Tedesco*, 311 A.2d 393, 398 (N.J. Super. 1973) (citations omitted). New Jersey "adhere[s] strictly to the requirement that a private plaintiff proceeding on a public nuisance theory demonstrate special injury," *Lead Paint*, 924 A.2d at 498, and its courts have

---

[5] Plaintiffs cite *Jersey City Redevelopment Authority*, Opp. at 27, to argue for a public right "to an uncontaminated environment" generally, but that case preceded *Lead Paint* by two decades and had no occasion to analyze the law of common right.

long enforced this requirement, including in abatement cases.[6]  It is only when a "private party … has suffered special injury" and may seek damages that he, "***by extension***, may ***also*** seek to abate."  *Lead Paint*, 924 A.2d at 499 (emphases added).

Against this century of jurisprudence, Plaintiffs cite only *Severa v. Solvay Specialty Polymers USA, LLC*, 524 F. Supp. 3d 381 (D.N.J. 2021).  That case relied on *Lead Paint*, but accounts for neither the language quoted above nor any other precedent.  *Severa* noted only that *Lead Paint* cited to Restatement Section 821C, which includes a provision—not germane to *Lead Paint*'s analysis—that private parties may seek abatement if they have "standing to sue," including "as a member of a class."  524 F. Supp. 3d at 395.  That provides no warrant for dispensing with the special injury rule.  As the Restatement itself notes, "the traditional rule" is that an individual who has not suffered a special injury "also has no standing" to seek an injunction, and, in any event, questions of ***standing*** are "not fully appropriate for a Restatement" of ***torts***.  Restatement Section 821C cmt. j.  Neither *Lead Paint* nor any other New Jersey Supreme Court opinion has loosened the "traditional" special injury requirement that New Jersey courts have "adhered strictly to," *see Lead Paint*,

---

[6] *See, e.g.*, *Howell v. Waste Disposal*, 504 A.2d 19, 28-29 (App. Div. 1986) ("[A] public nuisance is abatable only by … the Attorney General … [or] an individual who sustains special damage."); *Morris v. Haledon*, 93 A.2d 781, 785 (N.J. Super. 1952) ("[A]n individual plaintiff may maintain an action to restrain the [nuisance] upon a showing that he has sustained special damage."); *Humphreys v. Eastlack*, 51 A. 775, 777 (Ct. Chancery 1902) ("A long line of decisions … declares that a private citizen cannot sustain a bill to abate" absent "special injury peculiar to himself.").

924 A.2d at 498, including in a class action case Plaintiffs themselves cite, *Colon*, 311 A.2d at 398. "Public nuisance is a matter of state law," which federal courts should not expand "in ways not foreshadowed by state precedent." *Camden County v. Beretta, U.S.A.*, 273 F.3d 536, 541 (3d Cir. 2001).

Plaintiffs' alternate argument that they pleaded a special injury deserves no weight. They argue that "injury to a business" can constitute a special injury, Opp. at 30, but have alleged no such injury. Plaintiff Bostard is retired; neither he nor Plaintiff Rockhill alleges any type of commercial harm; and neither could allege such harm incurred ***while*** "exercising the right common to the general public that was the subject of interference." *PECO v. Hercules*, 762 F.2d 303, 315 (3d Cir. 1985) (quoting Restatement (Second) of Torts § 821C).[7]

## VI.    The Class Allegations also Fail on the Pleadings.

Plaintiffs cannot plead a class claim—for any remedy—due to lack of either predominance or its more rigorous counterpart, cohesiveness. There is nothing premature about deciding that now, as the court in *Lafferty* did when holding that "Rule 12 can be used to dismiss class allegations" for medical monitoring. 2018 WL 3993448, at *5. Here, just as in *Lafferty*, "individual fact finding is *essential*"

---

[7] Plaintiffs cite Section 821C cmt. c to suggest that frequently encountering an alleged hazard is itself a special injury. Opp. at 29. But the comment states that if there is a "special reason" for repeated encounters with a nuisance, "***that*** reason"— not the encounters themselves—might evince special injury (emphasis added).

because "potential exposures, if any, are likely drastically different." *Id.* at \*6. Plaintiffs dismiss *Lafferty* because, they say, the plaintiffs in that case (represented by some of the same counsel who represent Plaintiffs here) "sought to ignore the obvious reality that people who lived next to" a pollution source were "differently situated from people who lived miles away." Opp. at 39 n.8. But the same is true here—without individualized inquiries, there is no way to determine, for example, whether and to what extent a given person was exposed to Verizon cables or other potential sources of lead exposure. For instance, the longer an employee worked on utility poles, the more alternate exposure sources there will be to probe.[8]

Plaintiffs also misconstrue the claim-splitting problem created by their attempt to disavow personal-injury claims. Opp. at 36. The question is not whether class members can pursue personal-injury claims that accrue later. The question is whether Plaintiffs seek a class that encompasses putative members with personal-injury claims they could allege have ***already*** accrued, while disavowing those very claims. As the SAC makes clear, that is exactly the improper path Plaintiffs pursue. MTD at 38.

For all of these reasons, the SAC should be dismissed with prejudice.

---

[8] Plaintiffs rely on *In re Nat'l Football League*, but that was a settlement class with a lower standard of review for predominance. 821 F.3d 410, 434 (3d Cir. 2016). Plaintiffs also cite *Donovan v. Philip Morris USA, Inc.*, but that court denied certification on negligence claims given the individualized inquiry on whether "class members … acted reasonably." 268 F.R.D. 1, 29 (D. Mass. 2010) (cleaned up).

Dated: July 10, 2024

Respectfully submitted,

*s/ Jennifer L. Del Medico*
Bridget K. O'Connor
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 200001
Telephone: +1.202.879.3939
Facsimile:  +1.202.626.8585

Leon F. DeJulius Jr.
Sharyl A. Reisman
Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, New York 10281
Telephone: +1.212.326.3939

*Counsel for Defendants*

16