# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREG BOSTARD and TONY ROCKHILL, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br><br>VERIZON COMMUNICATIONS INC., and VERIZON NEW JERSEY INC.<br><br>        Defendants. | Case No. 1:23-cv-08564-JHR-EAP<br><br>Honorable Joseph H. Rodriguez<br><br>Honorable Elizabeth A. Pascal |

**WHEREAS**, Greg Bostard and Tony Rockhill ("Plaintiffs") and Verizon Communications Inc. and Verizon New Jersey Inc. (together, "Defendants," and with Plaintiffs, the "Parties") have conferred regarding the physical telecommunications cables and associated equipment that allegedly are the subject of this proceeding and have reached an agreed stipulation to address Defendants' ongoing maintenance and business operations, as reflected herein.

**WHEREAS**, Plaintiffs believe that the condition of the lead-sheathed cables in Defendants' telecommunications network and their surrounding environments is relevant to their claims and should be preserved.

**WHEREAS**, Defendants conduct emergency and non-emergency maintenance and removals of their infrastructure and associated equipment, potentially including lead-containing infrastructure, and assert that they must be able to continue to conduct such maintenance during the pendency of this litigation. Such non-emergency maintenance and removal activities may include, but are not limited to:

- Splicing, covering, securing, repairing, or removing damaged or aged cables;

- Repair or removal of non-cable infrastructure, including splice boxes, poles, or other infrastructure;

- Cable relocation to accommodate third-party construction work; and

- Periodic large-scale removal of cable no longer providing service to customers.

**WHEREAS**, Defendants do not believe it is feasible from an operational perspective for Defendants to store all of the lead-sheathed cable removed from the field indefinitely, Defendants are facing allegations that lead-sheathed cables "likely constitute RCRA hazardous waste" and are subject to statutory and regulatory requirements under, *inter alia*, 42 U.S.C. § 6903, and a regulator could argue that certain Resource Conservation and Recovery Act regulations would prevent Defendants from indefinitely storing lead-sheathed cable. Am. Compl. ¶ 104.

**WHEREAS**, Defendants believe that if they were unable to conduct these maintenance and removal activities, it could prevent Defendants from carrying out their business across the state, and could, in some cases, result in the interruption of necessary telecommunications services to the public.

**WHEREAS**, to balance Defendants' need to conduct both emergency and non-emergency maintenance and removal activities, and Plaintiffs' desire to preserve evidence relevant to their claims, the Parties hereby stipulate that:

1. Defendants will maintain a numbered and alphabetized list of all wire centers with copper cable in New Jersey (each wire center, a "Site"). As described below, Defendants will use the list to identify the Sites corresponding to the numbers selected by Plaintiffs.

2. Plaintiffs will randomly select ten unique wire center locations in Defendants' cable network in the State of New Jersey that contain an amount of lead-sheathed cable

sufficient for future potential sampling. Plaintiffs will make these selections by choosing ten numbers within the range of the total number of Sites within Defendants' copper network in New Jersey.

3. Once the Sites are identified, Defendants will provide Plaintiffs with a copy of the list of the selected Sites, including the wire center name and geographic boundary of each selected Site, and review their records to confirm that each selected Site contains an amount of lead-sheathed cable sufficient for future potential sampling and will confer with Plaintiffs on the same.

4. In the event one of the selected Sites does not contain an amount of lead-sheathed cable sufficient for future potential sampling, Defendants will notify Plaintiffs of same, and Plaintiffs will select another Site, until ten Sites are selected that contain an amount of lead-sheathed cable sufficient for future potential sampling.

5. After the first ten Sites are randomly selected, Plaintiffs and Defendants will each have the opportunity to veto two of the ten randomly selected Sites, for any reason. Any Site that is vetoed will promptly be replaced by another randomly selected Site chosen by Plaintiffs using the same process set forth in Paragraph 2. The resulting ten Sites following conclusion of the veto process are referred to herein as the "Identified Sites."

6. Defendants will provide Plaintiffs with as much notice as reasonably practical and no fewer than thirty calendar days' advance notice of any contemplated non-emergency maintenance or removal activity at any of the Identified Sites.

7. If, after being notified of contemplated activity at an Identified Site, Plaintiffs desire to inspect, measure, survey, photograph, test, or sample the Identified Site in accordance with Fed. R. Civ. P. 34 prior to the execution of the maintenance or removal work,

    Plaintiffs will notify Defendants of their desire to do so within five business days of receiving Defendants' notification.

8. The procedures set forth in Paragraphs 6-7 shall also apply to: (1) any remaining span of cable where Defendants (including any affiliate) have themselves tested lead levels at any Site at any time between July 1, 2023 and the date of this Order; and (2) any cable directly affixed to any specific telephone pole that Plaintiffs identify for Defendants as a location where one or both Plaintiffs were allegedly exposed to lead from a lead-sheathed cable (together, the "Additional Sites").

9. The Parties and their respective representatives and agents shall maintain any location information provided pursuant to this stipulation on a confidential basis, shall not use the information for any purpose outside of this litigation, and shall share the information only with retained experts, who shall likewise be bound by this confidentiality provision.

10. Nothing in this stipulation will prevent Plaintiffs from requesting, within the scope of Fed. R. Civ. P. 26(b), and in accordance with Fed. R. Civ. P. 34, the ability to inspect, measure, survey, photograph, or sample at locations other than the Identified Sites or the Additional Sites.

11. Prior to beginning any sampling in connection with this proceeding, the Parties will negotiate a split sampling protocol.

12. In locations other than the Identified Sites and Additional Sites, actions taken in the course of Defendants' emergency and non-emergency maintenance and removal activities shall proceed in the ordinary course without any new or additional documentation, notice, or other measures required of Defendants, beyond what would

typically take place in Defendants' usual business process. The Parties acknowledge that these non-emergency maintenance and removal activities are separate and apart from the Defendants' emergency response to events, including but not limited to service outages, weather-related events, or downed cables. Such emergency response activities will continue without any change.

**ACCORDINGLY**, the Parties ask the Court to enter the following joint stipulated order:

**NOW, THEREFORE, IN RECOGNITION OF THE PARTIES' AGREEMENT, IT IS HEREBY ORDERED THAT:**

1. Defendants are allowed to conduct emergency and non-emergency maintenance and removal of their infrastructure and associated equipment, potentially including lead-containing infrastructure or equipment, during the pendency of this litigation.

2. Plaintiffs will randomly select ten unique wire center locations in Defendants' copper cable network in the State of New Jersey that contain an amount of lead-sheathed cable sufficient for future potential sampling (each selected wire center, a "Site"). Plaintiffs will make these selections by choosing ten numbers within the range of the total number of wire centers within Defendants' New Jersey copper network. Defendants will maintain a numbered and alphabetized list of all wire centers with copper cable in New Jersey, which Defendants will use to identify the wire centers corresponding to the numbers selected by Plaintiffs. Once the wire centers are identified, Defendants will review their records to confirm that an amount of lead-sheathed cable that Plaintiffs deem sufficient is available for sampling at each Site and will confer with Plaintiffs on the same.

3. After ten Sites are selected and identified, each Party will have five business days to veto any two of the ten sites selected, for any reason. Any vetoed site will be replaced by another randomly selected site using the same process addressed in Paragraph 2. Hereinafter, the resulting sites are referred to as the "Identified Sites."

4. For the Identified Sites, Defendants shall provide Plaintiffs with as much notice as reasonably practical and no fewer than thirty calendar days' advance notice of any contemplated non-emergency maintenance or removal activity at any of the Identified Sites. If, after being notified of contemplated activity at an Identified Site, Plaintiffs desire to inspect, measure, survey, photograph, test, or sample the Identified Site in accordance with Fed. R. Civ. P. 34 prior to the execution of the maintenance or removal work, Plaintiffs will notify Defendants of his desire to do so within five business days of receiving Defendants' notification.

5. The procedures set forth in Paragraph 4 shall also apply to: (1) any remaining span of cable where Defendants (including any affiliate) have themselves tested lead levels in the immediately surrounding area for lead contamination at any Site at any time between July 1, 2023, and the date of this Order; and (2) any cable directly affixed to any specific telephone pole that Plaintiffs identify to Defendants as a location where one or both Plaintiffs were allegedly exposed to lead from a lead-sheathed cable (together, the "Additional Sites").

6. Prior to beginning any sampling in connection with this proceeding, the Parties will negotiate a split sampling protocol.

7. The Parties and their respective representatives and agents shall maintain any location information provided pursuant to this Order on a confidential basis, shall not use the information for any purpose outside of this litigation, and shall share the information only with retained experts, who shall likewise be bound by this confidentiality provision.

8. Nothing herein shall prevent Plaintiffs from requesting, within the scope of Fed. R. Civ. P. 26(b), and in accordance with Fed. R. Civ. P. 34, the ability to inspect, measure, survey, photograph, or sample at locations other than the Identified Sites or the Additional Sites.

9. Aside from the procedure outlined above for the Identified Sites and the Additional Sites, Defendants' non-emergency cable maintenance and removal activities shall proceed in the ordinary course without any new or additional documentation, notice, or other measures required of Defendants, beyond what would typically take place for such activities in the ordinary course.

10. Nothing herein shall require notice of, or impede Defendants' ability to undertake, emergency maintenance or repair activities, including but not limited to activities in response to service outages, weather-related events, or downed cables.

SO ORDERED this **7th** day of **January 2025**.

_____
ELIZABETH A. PASCAL
United States Magistrate Judge

Dated: January 6, 2025

 /s/ *Christopher L. Ayers*
Christopher L. Ayers
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Tel: 93-639-9100
cayers@seegerweiss.com

*Counsel for Plaintiffs*
*Greg Bostard and Tony Rockhill*

Respectfully submitted,

 /s/ *Jennifer L. Del Medico*
Jennifer L. Del Medico
JONES DAY
250 Vesey Street
New York, New York 10281
Ph: (212) 326-3939
Fx: (212) 755-7306
jdelmedico@jonesday.com

Alisann K. Anderson (pro hac vice)
JONES DAY
110 N. Wacker Dr., Ste. 4800
Chicago, IL 60606
Ph: (312) 782-3939
Fx: (312) 783-8585
akanderson@jonesday.com

*Counsel for Defendants*
*Verizon Communications Inc. and Verizon*
*New Jersey Inc.*